## Case No. 10,960.

### PENSACOLA TEL. CO. v. WESTERN UNION TEL. CO.

[2 Woods, 643.] [1]

Circuit Court, N. D. Florida.    March Term, 1875.[2]

CONSTITUTIONAL LAW — EXCLUSIVE PRIVILEGE TO BUILD TELEGRAPH LINES—CONFLICT OF LAWS.

1. The section of an act of a state legislature which purported to give the exclusive right to a telegraph company, incorporated by it, to erect and use lines of telegraph within certain counties of the state, is in conflict with the act of congress approved July 24, 1866 [14 Stat. 221], entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military and other purposes;" and the section conferring such exclusive right is therefore null and void.

[Cited in Com. v. Louisville Bridge Co., 42 Fed. 245; Mercantile Trust Co. v. Atlantic & P. R. Co., 63 Fed. 519.]

2. Congress has the constitutional power to pass an act giving to telegraph companies, organized under state laws, the right to construct and use lines of telegraph along any of the military or post roads of the United States.

This was a cause in equity which was submitted on the pleadings and evidence for final decree.

Chas. W. Jones, R. L. Campbell, and G. A. Stanley, for complainant.

C. C. Yonge and E. A. Maxwell, for defendant.

WOODS, Circuit Judge. The bill avers in substance that on the 11th day of December, 1866, the legislature of the state of Florida passed an act by which it made the complainant company a body corporate, and conferred upon said company the sole and exclusive right and privilege of establishing and maintaining lines of electric telegraph in the counties of Escambia and Santa Rosa. [Laws 1866, p. 54.] That in pursuance of authority conferred by its act of incorporation, the said company had erected a line of telegraph along the right of way of the Alabama & Florida Railroad Company, within the county of Escambia, from Pensacola to the Alabama line, a distance of forty-seven miles. That by virtue of the pretended authority contained in an act of the legislature of Florida, approved February 19, 1874 [Laws 1874, p. 59], the defendant company, disregarding the exclusive rights conferred upon complainant by its charter, is proceeding to erect in the county of Escambia, and along the identical railway route where the line of complainant is erected, a line of electric telegraph, and it is the purpose of defendant to use its line, when erected, for the transmission of telegraphic dispatches for hire. That the erection and use of said line will greatly impair the value of the line erected by complainant, and deprive it of the benefit of its exclusive privileges

within the counties of Escambia and Santa Rosa, granted by the legislature of Florida. The bill prays that defendant may be restrained from the erection and use of said line of telegraph within the county of Escambia in the state of Florida. The answer admits that the defendant company is erecting a line of telegraph from Pensacola to the Alabama state line, all within the county of Escambia, in the state of Florida. It avers that the line will follow the right of way of the Louisville & Pensacola Railroad Company, from which it has obtained a license to erect its line upon said right of way, and it claims the right to erect and use its line for the purpose of transmitting messages by telegraph for hire, by virtue of authority granted by the legislature of Florida, and also by virtue of an act of congress, approved July 24, 1866. The answer avers that the defendant has filed with the post master general its written acceptance of the restrictions and obligations required by said act.

As in my judgment, the law of congress is sufficient authority for the acts of defendant, it will only be necessary, in deciding this case, to consider its provisions. It is entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military and other purposes," and is found on pages 221, 222, 14 Stat. (Rev. St. tit. "Telegraphs"). The first section declares that any telegraph company now organized, or which may hereafter be organized under the laws of any state of this Union shall have the right to construct, maintain and operate lines of telegraph * * * along any of the military, or post roads of the United States, which have been or may hereafter be declared such by act of congress. Section 2 provides that telegraphic communications between the several departments of the government of the United States, and their officers and agents, shall, in their transmission over the lines of said companies, have priority over all other business, and shall be sent at rates to be annually fixed by the post master general. The 3d section, among other things, provides that the United States may, at any time after the expiration of five years from the passage of the act for postal, military or other purposes, purchase all the telegraph lines, property, and effects of any or all of said companies at an appraised value, to be ascertained by five competent, disinterested persons, to be appointed as is provided in said section. The 4th and last section declares that before any telegraph company shall exercise any of the powers or privileges conferred by this act, such company shall file its written acceptance with the post master general of the restrictions and obligations required by this act. By an act of congress approved June 8, 1872 (Rev. St. § 3964 [17 Stat. 283]), all railroads are declared to be post roads. This act of July 22, 1866, the provisions of which have just been stated, was, it will be observed, in

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 96 U. S. 1.]

force before the passage of the act of the legislature of Florida, incorporating the complainant, and giving it exclusive privileges. The constitution of the United States (article 5) declares, that "this constitution and the laws of the United States, which shall be made in pursuance thereof, * * * shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary, notwithstanding." If congress had power to pass this act, it would seem to follow, that the act of the legislature of Florida could not override it. It will be observed, that the act contemplates the use of the telegraph lines for postal, military or other purposes; that it gives the business of the several departments and officers of the government the priority over all other business, and at rates to be prescribed by an officer of the government, and that it provides for the purchase, at an appraised value, by the government, if it shall so elect, of the lines of the companies which take advantage of the act, and the companies are required to assent to these conditions. The power of congress to pass the act may be referred to the power to regulate commerce among the several states (Gibbons v. Ogden, 9 Wheat. [22 U. S.] 189–229), or it may be referred to the power to establish post offices and post roads, or to the power to raise and support armies, or to the power to make all laws which shall be necessary and proper for carrying into execution the foregoing powers. The use of the electric telegraph by the departments and officers of the government has become absolutely necessary to the carrying on of the operations of the government. The functions of the government, either in war or peace, could not now be carried on without its use. The power, therefore, to secure its advantages must necessarily exist in congress. It is not supposed, nor is it claimed by defendant, that the act of congress gives a telegraph company the right to occupy the right of way owned by railroad companies without compensation. The right of way of a railroad company is private property and cannot be taken for public or private use without compensation. The main purpose and effect of the law is to prevent just such legislation by the states as that set up by the complainant in this case. If every state legislature should undertake to pass such charters as that granted to the Pensacola Telegraph Company, the operations of the general government, so far as they are carried on by the telegraph company, would be greatly impeded if not absolutely obstructed. But it is claimed by the counsel for the Pensacola Telegraph Company, that it was not the purpose of the act of congress to authorize the telegraph companies of one state to erect telegraph lines along post roads within the limits of another state. It would seem to be a sufficient answer to this, that the act itself makes no such restriction. Its language is plain and unequivocal: "Any telegraph company now organized or which may hereafter be organized under the laws of any state of this Union shall have the right to construct and operate lines of telegraph * * * along any of the military or post roads of the United States which have been or may hereafter be declared such." Here is no such restriction as the complainant insists upon. Such a restriction, it is plain to see, would defeat the object of the act which is to provide telegraph lines all over the country, of which the government should have the priority of use at reduced rates, and which it may purchase at its option.

Upon the whole case, I am of opinion that so much of the act of the legislature of Florida, as purported to give the exclusive right to the complainant to erect and use lines of telegraph in the counties of Escambia and Santa Rosa was in conflict with the act of congress and, therefore, null and void. These views coincide with the opinion expressed in the case of Western Union Tel. Co. v. Atlantic & P. Tel. Co., 5 Nev. 102. The result is, that the complainant has not shown itself entitled to the injunction prayed for by its bill. The bill must therefore be dismissed at complainant's cost. Decree accordingly.

[NOTE. The decree in this case was affirmed upon appeal to the supreme court, Mr. Chief Justice Waite delivering the opinion; Mr. Justice Field and Mr. Justice Hunt dissenting. 96 U. S. 1.]