## MERCANTILE TRUST CO. v. ATLANTIC & P. R. CO.

(Circuit Court, S. D. California. September 26, 1894.)

### No. 584.

1. **TELEGRAPH COMPANIES— ERECTION OF LINE ON RAILROAD RIGHT OF WAY— MILITARY AND POST ROADS.**
   A telegraph company which is embraced within the terms of the act of July 24, 1866 (Rev. St. § 5263), and has accepted its provisions, is entitled, by the terms thereof, to erect a line of telegraph upon a railroad right of way granted by congress out of the public domain, subsequent to the date of that act, and declared by the granting act to be a military and post road of the United States; subject, however, to the condition that the telegraph line be so constructed as not to interfere with ordinary travel on the railroad.

2. **INTERVENTION IN EQUITY.**
   The alleged right of a telegraph company to build a telegraph line upon the right of way of a railroad company whose property is in the hands of the court's receiver pending foreclosure may properly be presented and enforced by intervention in the foreclosure proceeding.

3. **SAME—CALIFORNIA STATUTE—FEDERAL COURTS.**
   The California statute relating to interventions has no application to interventions in railroad foreclosure proceedings pending in a federal court.

This was a petition of intervention filed by the Postal Telegraph Cable Company in the suit brought by the Mercantile Trust Company against the Atlantic & Pacific Railroad Company, the object of the intervention being to enforce an alleged right of the telegraph company to erect a line of telegraph upon the railroad company's right of way. Heard on demurrer to the petition of intervention.

Lamme & Wilde and Frank J. Loesch, for Postal Tel. Cable Co.
R. B. Carpenter and H. D. Estabrook, for respondent.

ROSS, District Judge. In this cause the Postal Telegraph Cable Company filed a petition setting forth that it is a corporation organized January 25, 1886, under and by virtue of the laws of the state of New York, for the purpose of owning, constructing, using, and maintaining lines of electric telegraph within and also beyond the limits of that state; that, under its articles of incorporation, the petitioner may, by its line or lines of telegraph, connect each and every city, town, and village within the United States where a post office has been established, and each and every such city, town, and

village is, by said articles of incorporation, designated as a point to be connected by telegraph; that after its incorporation, and, to wit, on the 6th day of April, 1886, the petitioner filed its written acceptance with the postmaster general of the restrictions and obligations required by section 5263 of the Revised Statutes of the United States, hereinafter set out, and thereby acquired the right to, among other things, construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, and over and along any of the military or post roads of the United States; that it owns, and has constructed, and now uses and maintains, lines of telegraph in the United States connecting nearly all of the principal cities east of the Rocky mountains with each other, and has open and maintains over 3,000 telegraph offices, between all of which offices, when required by any of the officers of the United States, it transmits government telegrams at rates annually fixed by the postmaster general; that it is now engaged in constructing a main or trunk telegraph line from La Junta, Colo. (where it connects with its eastern lines), via Albuquerque, N. M., on the Atlantic & Pacific Railroad, through New Mexico, Arizona, and California, to Mojave, in this state, there to connect with the Pacific Postal Telegraph Company's lines in California; that its line of telegraph has been erected and constructed on the right of way of said Atlantic & Pacific Railroad from Mitchell Station, in New Mexico, to the Arizona territorial line, under and by virtue of a decree of the district court for the second judicial district of New Mexico, entered upon petitioner's petition, in the case wherein the Mercantile Trust Company is complainant, and the Atlantic & Pacific Railroad Company is defendant; that petitioner's line of telegraph from the New Mexico and Arizona boundary line is now being erected and constructed upon the right of way of the Atlantic & Pacific Railroad Company under and by virtue of a decree of the district court for the fourth judicial district of Arizona, entered upon a like petition in that jurisdiction; that by an act of congress approved July 27, 1866, incorporating the Atlantic & Pacific Railroad, said railroad was granted, among other things, a right of way 200 feet wide through all public lands, and such additional public lands as it might find necessary for station buildings, or workshops, depots, machine shops, switches, side tracks, turntables, and water stations, and that it was also declared by the act of July 27, 1866, that said Atlantic & Pacific Railroad, or any part thereof, shall be a post road and military route, subject to the use of the United States for postal, military, naval, and all other government service; that the Atlantic & Pacific Railroad, as constructed and now operated, from the California state line, at the point known as the "Needles," in San Bernardino county, to Mojave, in Kern county, Cal., was constructed upon, through, and over public lands of the United States; and that the said right of way occupied, controlled and owned by said railroad company is of the width of 200 feet throughout its entire length in California.

The petition further alleges that the petitioner is about to com-

mence the construction of its said line of telegraph in the state of California, from the Needles to Mojave, and desires and claims the right to construct its said line of telegraph under the power conferred upon it by its charter, and under the laws of the United States and of California, upon the right of way of the said Atlantic & Pacific Railroad from the Needles to Mojave, said line to be so constructed and maintained by petitioner as not to interfere with the usual and ordinary operation and maintenance of said railroad. The petitioner further alleges that the construction, maintenance, and operation of said telegraph line would be of great benefit to the receivers of the Atlantic & Pacific Railroad and to said railroad company, in that petitioner is now paying, and must continue to pay, to the receivers or the owner of such railroad, large sums of money for the transportation of telegraph poles and other materials needed to construct and maintain the line, and will give to the railroad additional telegraph facilities; that it is usual and customary for railroad companies to extend to a telegraph company, constructing telegraph lines upon the railroad rights of way, material aid and assistance, by furnishing freight trains with cars to carry telegraph material, and distributing the same between stations along the line of construction as the material may be needed, and to aid in other ways to expeditiously and economically construct such lines and repairs; that, by reason of the natural obstacles to be overcome in the country traversed by the Atlantic & Pacific Railroad in this state, petitioner needs, and will need, in order to expeditiously construct its line of telegraph, the aid of said receivers in furnishing said facilities for distributing telegraph lines, material, and the additional requirement of furnishing such petitioner and its employés with water for their necessary use, petitioner alleging that, at many places and between long distances on said railroad, the water is owned and controlled by said receivers. Petitioner further alleges, upon information and belief, that the said described aid and facilities have been furnished, and are being furnished, by the receivers to the Western Union Telegraph Company, which claims to own and operate, in connection with the said Atlantic & Pacific Railroad, a telegraph line upon the said railroad right of way in the state of California, as hereinbefore described. The petitioner further alleges that it has notified the receivers of the Atlantic & Pacific Company that it desired to erect and construct its telegraph line upon said described railroad right of way in the state of California from the Needles to Mojave, and desired to have extended to it the aforesaid aid and facilities, and that for said right of way, and for such aid and facilities, petitioner was ready and willing, and offered, and in the petition offers, to pay to said receivers just compensation, and requested said receivers not to interfere with the erection of petitioner's telegraph line upon said right of way; but that the receivers refused, and do refuse, to allow the petitioner to construct its telegraph line upon said right of way in the state of California; and that they refused, and still refuse, to furnish to petitioner such aids and facilities, alleging and giving as a reason for such refusals the existence of a certain contract in writing, entered

into on the 1st day of June, 1872, between the Atlantic & Pacific Railroad Company and the Western Union Telegraph Company, a corporation of the state of New York, for the construction and maintenance of a telegraph line for the joint use of said two companies, the ninth clause of which contract the petitioner alleges reads as follows:

"Ninth. The said railroad company further agrees to grant the said telegraph company, as far as it has the right and power so to do, the exclusive right of way for telegraphic purposes on and along the line of its road, and will not permit any other person or corporation to construct a line or lines of telegraph along said railroad, nor, in any case, will it furnish to such other person or corporation facilities, aid, or assistance in constructing or maintaining such competing lines which it may lawfully withhold."

The petition further alleges that by said contract of June 1, 1872, facilities are extended by said Atlantic & Pacific Railroad and said receivers to the Western Union Telegraph Company which are by said railroad company and by said receivers denied to the petitioner under like conditions and circumstances; that the receivers aver that but for the existence of the aforesaid contract of June 1, 1872, they would grant to petitioner the rights claimed by it for a just and reasonable compensation, to be agreed upon between them; and they pray for an order or decree of the court directing the receivers to accord to the petitioner the alleged rights and privileges.

In response to the petition, the counsel for the receivers appeared, and stated in open court that by reason of the contract of June 1, 1872, between the Atlantic & Pacific Railroad Company and the Western Union Telegraph Company, they would authorize the attorneys of the Western Union Telegraph Company to appear for and contest in the name of the Atlantic & Pacific Railroad Company the intervening petition of the Postal Telegraph Cable Company; and, accordingly, the attorneys of the Western Union Telegraph Company filed, in the name and on behalf of the Atlantic & Pacific Railroad Company, a demurrer to the intervening petition, upon these grounds:    (1) That the court is without jurisdiction to entertain or grant the prayer of intervener's petition in the summary manner proposed.    (2) For that the petition of intervention raises issues wholly foreign and collateral to those involved in the original suit of The Mercantile Trust Company v. The Atlantic & Pacific Railroad Company, and shows no right, title, or interest in or to the subject-matter of the original suit opposed to either of the parties to such suit, or both of them.    (3) For that there is a defect of parties, it appearing from the petition that the Western Union Telegraph Company has, or claims to have, rights which would be affected by the order sought; furthermore, that it appears from the petition that the right of way of the said several railroad companies is at least in part over and through private grounds; and that an additional burden or servitude placed upon said right of way would entitle the owners of abutting property to a hearing and compensation; and that all of said

abutting owners to be so affected are necessary parties to the determination of this matter. (4) For that it is beyond the scope of the duties or powers of the receivers to grant, bargain, or sell any portion of the right of way, or to fasten upon the same any additional burden or servitude. (5) For that it is beyond the powers or jurisdiction of the court, by interlocutory order or other interlocutory or collateral proceeding, to authorize the court receivers to sell, bargain, or convey any portion of the right of way of said railroad company, or to incumber the same by any additional burden or servitude for years or in perpetuity.' (6) For that it appears from the petition that the Western Union Telegraph Company had paid a consideration to said railroad company for the faithful observance of all the terms of the contract between it and the Atlantic & Pacific Railroad Company, including the covenant and provision complained of by the petition, and that there is in the petition no offer to pay or refund to the Western Union Telegraph Company the said consideration, or any part of it. (7) For that the intervening petition does not state facts sufficient to constitute a cause of action.

The suit in which the intervening petition was filed was brought by the Mercantile Trust Company of New York, as the holder in trust of certain bonds issued by the defendant railroad company, to foreclose a mortgage given as security for their payment, and to obtain the appointment of a receiver of the mortgaged property pending the litigation. The suit was therefore one in equity; and the California statute respecting intervention, relied on in support of the demurrer, does not, I think, have any application to the present proceeding. The property in question being in the hands of the officers of the court, there is no more appropriate way in which to present the alleged rights of the Postal Telegraph Company than by an intervening petition. A similar practice has been several times sustained by the supreme court. Vault Co. v. McNulta, 153 U. S. 554, 14 Sup. Ct. 915; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27; Joy v. City of St. Louis, 138 U. S. 1, 11 Sup. Ct. 243. See, also, High, Rec. §§ 254, 255; Kennedy v. Railroad Co., 3 Fed. 97.

The primary right claimed by the petitioner is the right to erect a line of telegraph on and along that portion of the right of way over the public domain extending from the Needles to Mojave, in this judicial district, granted to the Atlantic & Pacific Railroad Company by the act of congress of July 27, 1866, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from the states of Missouri and Arkansas to the Pacific coast." 14 Stat. 292. By that act the Atlantic & Pacific Railroad Company was incorporated, and authorized and empowered to lay out, locate, and construct, furnish, maintain, and enjoy a continuous railroad and telegraph line, with the appurtenances—

"Beginning at or near the town of Springfield, in the state of Missouri, thence to the western boundary line of said state, and thence by the most eligible railroad route as shall be determined by said company to a point on the Canadian river; thence to the town of Albuquerque, on the river Del Norte, and thence by way of the Aqua Frio, or other suitable pass, to the headwaters of the Colorado Chiquito, and thence, along the 35th parallel

of latitude, as near as may be found most suitable for a railway route, to the Colorado river, at such point as may be selected by such company for crossing; thence, by the most practicable and eligible route, to the Pacific [ocean]."

By the second section of the act it was enacted:

"That the right of way through the public lands be, and the same is, hereby granted to the said Atlantic & Pacific Railroad Company, its successors and assigns, for the construction of a railroad and telegraph as proposed. * * * Said way is granted to such railroad to the extent of 100 feet in width on each side of said railroad where it may pass through the public domain, including all necessary grounds for station buildings, workshops, depots, machine shops, switches, side-tracks, turn-tables, and water stations. * * *"

The eleventh section of the act provided that said Atlantic & Pacific Railroad shall be a post route and military road, subject to the use of the United States for postal, military, naval, and all other government service, and also subject to such regulations as congress may impose restricting the charges for such government transportation. At the time of the incorporation of the Atlantic & Pacific Railroad Company, and of the above-mentioned grant to it, there was, and ever since has been, in force, the act of congress of July 24, 1866, incorporated into the Revised Statutes as section 5263, which reads as follows:

"Any telegraph company now organized, or which may hereafter be organized, under the laws of any state, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with ordinary travel on such military or post roads."

That act has been the subject of consideration in several cases relied on in support of the demurrer; among them, a case decided in 1888, by Judge Allyn, of the second judicial district of the then territory of Washington, a pamphlet copy of whose opinion I have been favored with. That was a suit for an injunction brought by the Pacific Postal Telegraph Cable Company against the Northern Pacific Railroad Company et al., to restrain that company from interfering with the construction by the postal company of its line of telegraph along the right of way of said railroad company from Kalama to Tacoma. A portion of the right of way there in question was obtained by the defendant Northern Pacific Railroad Company under and by virtue of its grant by congress of July 2, 1864, which grant, in respect to the right of way, and in respect to the route being made a post and military road, was precisely similar to that made to the Atlantic & Pacific Railroad Company. It was there distinctly held that a telegraph company embraced by the terms of section 5263 of the Revised Statutes, and which accepted its provisions, is not thereby granted the right to construct a line of telegraph along that portion of the right of way of the Northern Pacific Railroad Company granted to it by the act of Congress of July 2, 1864. The court in that case concluded that the portion of the right of way

acquired by the Northern Pacific Railroad Company by virtue of its congressional grant occupied the same position as that portion of it acquired by purchase from private persons, and that in respect to each portion of the right of way the railroad company's right was absolute and exclusive. If so, it followed, of course, that no part of it could be taken without compensation. The cases of Pensacola Tel. Co. v. W. U. Tel. Co., 2 Woods, 643, Fed. Cas. No. 10,960, on appeal 96 U. S. 1, and W. U. Tel. Co. v. American Union Tel. Co., 9 Biss. 72, Fed. Cas. No. 17,444, are also relied on by counsel appearing for the respondent as sustaining the same proposition. But in that respect counsel are, I think, clearly in error. It does not appear that the right of way involved in the Pensacola Case or in the case decided by Mr. Justice Harlan, and reported in 9 Biss. 72, Fed. Cas. No. 17,444, was acquired under a congressional grant similar to the grant to the Atlantic & Pacific Railroad Company, or under any sort of a congressional grant. The right of way in each of those cases being private property, to which no reservations or conditions appear to have been attached, obviously could not be constitutionally taken for any sort of use without just compensation. By the act of July 24, 1866, congress, as said by the supreme court in the Pensacola Case, 96 U. S. 12, "made no attempt to provide for the appropriation of private property to the uses of the telegraph. * * * The use of public property alone is granted." At the time of the passage of the act of July 24, 1866, the land constituting the right of way of the Atlantic & Pacific Railroad Company from the Needles to Mojave was a part of the public domain of the United States. It was therefore in all respects subject to all the rights conferred by the act of July 24, 1866, upon any telegraph company then organized, or which might be thereafter organized, under the laws of any state, to wit:

"The right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters or interfere with the ordinary travel on such military or post roads."

Every telegraph company, in order to obtain the benefits of that act, was required to accept in writing the conditions imposed by it, which give to the business of the several departments and officers of the government priority over all other business of such company, and at rates to be fixed by an officer of the government, and confers upon the government the privilege of purchasing the lines of such company at an appraised value. Act July 24, 1866, §§ 2, 3 (Rev. St. §§ 5266, 5267).

In the case of Pensacola Tel. Co. v. W. U. Tel. Co., 96 U. S. 1, it was insisted that the grant contained in the act of July 24, 1866 (Rev. St. § 5263), extends only to such military and post roads as are upon the public domain. But the supreme court, in answering that contention, said:

"This, we think, is not so. The language is: 'Through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by act of congress, and over, under, or across the navigable streams or waters of the United States.' There is nothing to indicate an intention of limiting the effect of the words employed, and they are therefore to be given their natural and ordinary signification. Read in this way, the grant evidently extends to the public domain, to military and post roads, and the navigable waters of the United States. These are all within the dominion of the national government to the extent of the national powers, and are therefore subject to legitimate congressional regulation."

This law, as has been said, was in force when the grant to the Atlantic & Pacific Railroad Company was made; and, as the act creating that 'company and making that grant made the Atlantic & Pacific Company a post and military road, and did not exempt it from the operation of the act of July 24, 1866, it follows, I think, that the Atlantic & Pacific Railroad Company took its grant subject to the provisions of the act of July 24, 1866. The Atlantic & Pacific Company is undoubtedly entitled to full protection of the right of way granted to it to the extent of its necessary and ordinary uses; for, as has been seen, the grant to telegraph companies expressly provides that such lines of telegraph shall not be so constructed or maintained as to interfere with the ordinary travel on the military or post roads. But the full protection of those rights does not exclude from its right of way any telegraph company embraced by the act of July 24, 1866, and which has accepted its conditions, whose lines of telegraph can be so constructed and maintained as not to interfere with the ordinary travel on such roads.

Entertaining these views in respect to the congressional legislation upon the subject, it is unnecessary to consider that portion of the contract of June 1, 1872, by which the Atlantic & Pacific Railroad Company undertook, so far as it could, to confer upon the Western Union Telegraph Company the exclusive right for telegraphic purposes on and along its right of way. Whether the facilities asked for by the petitioner are within the scope of the ordinary duties of the Atlantic & Pacific Railroad Company can be best determined upon the coming in of the answer and the making of the proof. Demurrer overruled.