WESTERN UNION TELEGRAPH CO. et al. v. POSTAL TELEGRAPH CO.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1914.)

No. 2399.

1. CONTRACTS (§ 116*)—COMBINATIONS PROHIBITED—CONTRACT GRANTING EX-
   CLUSIVE USE OF RIGHT OF WAY TO TELEGRAPH COMPANY—VALIDITY.
   A contract by a railroad company, giving a telegraph company the ex-
   clusive right to maintain a telegraph line upon its right of way, is con-
   trary to public policy and void.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 542–552; Dec.
   Dig. § 116.*]

2. INJUNCTION (§ 5*)—NATURE AND FORM OF REMEDY—MANDATORY INJUNC-
   TION.
   An "injunction" is a writ framed according to the circumstances of
   the case, and a court of equity is not always limited to the restraint of
   a contemplated or threatened action, but may require affirmative action,
   where the circumstances of the case demand it.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 4; Dec. Dig.
   § 5.*
   For other definitions, see Words and Phrases, First and Second Series,
   Injunction.]

3. INJUNCTION (§ 57*)—NATURE AND FORM OF REMEDY—MANDATORY INJUNC-
   TION.
   Where a railroad company and a telegraph company had agreed on a
   contract giving the latter the right to construct and maintain its line on
   the railroad company's right of way, and its execution was prevented only
   by the objection of another telegraph company, which claimed exclusive
   use of the right of way under an illegal contract, it was within the power
   of a court of equity to require the execution of such contract by a man-
   datory injunction.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 111–113, 130;
   Dec. Dig. § 57.*]

Appeal from the District Court of the United States for the District of Oregon; Chas. E. Wolverton, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by the Postal Telegraph Company against the Western Union Telegraph Company and the Southern Pacific Company. Decree for complainant, and defendants appeal. Affirmed.

The case is fairly stated by counsel for the appellants. The original bill was filed August 25, 1911, and alleged, among other things, that the defendant Southern Pacific Company owns a leasehold interest in the railroad right of way of the Oregon & California Railroad Company from Eugene, in Lane county, Or., to New Era, in Clackamas county, a distance of 103 miles, upon part of which right of way the complainant maintains its telegraph line; that the Pacific Postal Telegraph-Cable Company, the predecessor in interest of the complainant, and which corporation had fully accepted the provisions of the Post Roads Act of Congress (Act July 24, 1866, c. 230, 14 Stat. 221 [Comp. St. 1913, § 10072]), constructed a telegraph line along said right of way more than 24 years prior to the commencement of the suit; that between New Era and Eugene the greater number of poles of the said telegraph line are not upon the railroad right of way, but upon adjoining land, and in some places where the poles are upon land adjoining the cross-arms and wires overhang the railroad right of way; that the complainant's predecessor in interest, the Pacific Postal Telegraph-Cable Company, erected the said poles and strung the wires thereon without permission or license from the Southern Pacific Company or the Oregon & California Railroad Company, and for more than 24 years maintained open, notorious, peaceable, adverse, continuous, and uninterrupted possession thereof; that the defendant Southern Pacific Company leased the said right of way from the Oregon & California Railroad Company, subject to the rights of the complainant and the burden of its telegraph line upon the said right of way; that the Oregon & California Railroad Company was one of the land grant railroad companies; that the complainant's telegraph line does not interfere with the operation of the railroad, and that the part of the right of way occupied by the complainant is not needed for railroad purposes, and that the complainant will not attach its wires or fixtures to the defendant Southern Pacific Company's bridges, trestles, buildings, or structures; that the complainant has accepted the provisions of the act of Congress of July 24, 1866, authorizing it to construct its line of telegraph over and along the military and post roads of the United States, and therefore has the right to maintain its telegraph line on the right of way of the defendant railroad company; that owing to the wear and tear of the elements, and in order to properly handle the business intrusted to the complainant by the public and the United States government, it is imperative that the complainant's telegraph line be at once repaired and reconstructed; that although the defendant railroad company's assistant general manager has informed the complainant's agent that it would prevent complainant, by force and violence, if need be, from repairing and reconstructing the said telegraph line, nevertheless the complainant, on or about July 25, 1911, commenced the repairing and reconstructing of the said line in a careful manner, and so as not to interfere with the operation of the railroad, planting new poles in identically the same portions of ground occupied by the old and worn poles, but that the defendant, on July 28, 1911, sawed off 90 of the new cross-arms and greatly damaged complainant's lines, and threatens to prevent any further repairing or reconstruction of its said line, with force and violence—the prayer of the bill being for an injunction restraining the defendant railroad from interfering with the repair, reconstruction, and maintenance of the complainant's telegraph lines on the railroad right of way between New Era and Eugene.

The defendant railroad company by its answer denied the alleged open, notorious, peaceable, adverse, continuous, and uninterrupted possession by the complainant of its telegraph line, and denied that the latter does not interfere with the operation of the defendant's railroad. As an affirmative defense the railroad company alleged that in November, 1886, while its predecessor, the Oregon & California Railroad Company, was in the hands of a receiver of the United States Circuit Court, the Pacific Postal Telegraph-Cable Company, the complainant's predecessor in interest, presented a petition to that court asking that it be allowed to place its poles, cross-arms, and wires upon the right of way of the said railroad, upon condition that it should allow

the same to remain upon said railroad right of way for such time as the receiver should be in possession of the said road, and that an order was made by the court granting the prayer of that petition on the 18th day of September, 1886, copies of which petition and order are set forth in the answer; that such occupancy as the complainant and its predecessor have and have had on said right of way was taken under the permission so granted, and that at the close of the receivership the poles and overhanging cross-arms of the complainant's predecessor were allowed to remain by permission and sufferance of the defendant railroad company on the right of way between New Era and Eugene; that in the five years then last past the use of the entire right of way of the defendant railroad company for railroad purposes has become necessary, particularly on account of the installation of a block signal system, and for that reason it has become necessary to revoke the permission granted to complainant's predecessor.

For a second affirmative defense the defendant railroad set up the proceedings in a suit commenced in the year 1907 by the Pacific Postal Telegraph-Cable Company against the Oregon & California Railroad Company and the Southern Pacific Company, its tenant, for the purpose of appropriating the right of way of those companies from the city of Portland, Or., to the state line between the states of California and Oregon, for a telegraph line to be constructed and maintained by the complainant, the complaint in that suit alleging that the damages to be sustained by the defendants by reason of such appropriation would be $2,100, but on a trial being had the jury assessed such damages at $66,000, which sum the telegraph company refused to pay; and it is alleged as a part of the second affirmative defense set up in the answer in the present suit that the judgment in that suit constituted an adjudication of all the matters and things at issue in the case at bar.

The case being at issue, the taking of testimony was commenced, pending which negotiations were entered into by the respective parties looking to an amicable settlement of their differences, to which end a contract was prepared on behalf of the Southern Pacific Company and submitted to the Postal Company, which latter company suggested certain modifications, resulting in an agreement between the two companies. The contract, however, was never signed, because of the fact that the defendant Western Union Telegraph Company declined to give its assent to the execution thereof by the Southern Pacific Company, and subsequently the Western Union Company took over the defense of the suit. Thereupon the complainant filed a supplemental bill, in which were recited the facts of the filing of the original bill and answer thereto and the unsuccessful attempt of the complainant and the Southern Pacific Company to adjust their differences, annexing to the supplemental bill a copy of the said alleged agreement unexecuted.

The supplemental bill alleged the existence of a contract between the Southern Pacific Company and the Western Union Telegraph Company, by the terms of which the latter company claimed the right to prevent the settlement of this suit, a copy of which the complainant has been unable to obtain, and alleged, upon its information and belief, that the same is in violation of a certain act of Congress of August 7, 1888 (25 Stat. 382, c. 772 [Comp. St. 1913, § 10080]). The supplemental bill further alleged·that, in addition to owning and maintaining a telegraph line between Eugene and New Era, in Oregon, the complainant had also for more than 20 years maintained a telegraph line along the railroad company's right of way between Portland and Myrtle Creek, and between Myrtle Creek and Ashland, in that state, and that the right to maintain all of this was included in the negotiations referred to, and by its prayer the complainant asked that the Western Union Telegraph Company be required to set forth its contract with the Southern Pacific Company, and that the contract between the complainant and the said Southern Pacific Company be made the basis of a decree to be entered, adjudicating the rights of all of the parties to the suit.

Both the Southern Pacific Company and the Western Union Telegraph Company demurred to the supplemental bill, which demurrer being overruled, the Western Union Telegraph Company filed an answer thereto, in which, among other things, it admitted that there is a contract between the Southern Pacific Company and the Western Union Telegraph Company by and through which

the Western Union Company "claims certain rights and privileges regarding the use of the right of way of the railway of the Southern Pacific Company in the supplemental bill set forth, but denies that this defendant claims the right to prevent the settlement of this action, except so far as any proposed settlement may injuriously affect any rights of this defendant; that it claims the right to object to or prevent such or any settlement as will or may involve or interfere with or injuriously affect its own rights. To any other settlement made between the Southern Pacific Company and the complainant this defendant claims no right to object, unless its approval of such proposed settlement is made a condition upon which the Southern Pacific Company undertakes to execute such agreement, in which case this defendant claims that it may withhold its assent and thereby prevent the execution of said agreement, whether this defendant has any interest in or is to be affected by such agreement or not," and further that the proposed agreement was laid before the defendant Western Union Telegraph Company by the Southern Pacific Company for its consideration, and that the Western Union Telegraph Company exercising its option in the premises, declined to approve the proposed agreement, and took over the defense of the present suit.

As an affirmative defense the Western Union Telegraph Company set up the making of an agreement on the 1st day of April, 1871, between it and the Oregon & California Railroad Company, under the terms of which it agreed to construct, maintain, and operate the telegraph line required by Act Cong. July 25, 1866, c. 242, 14 Stat. 239, and the construction and maintenance of such telegraph line pursuant to the terms of that agreement are alleged; that on October 1, 1901, the Southern Pacific Company, lessee of the Oregon & California Railroad Company, and the Western Union Telegraph Company, entered into an agreement which is set up in the answer, and which is the agreement sought to be disclosed by the supplemental bill, and under which it is alleged the Western Union Telegraph Company has continued to hold possession of the said right of way for telegraph purposes and has performed all of the requirements of the act of Congress of July 25, 1866, and met all demands of the railroad and of the United States. That contract provides for the ownership, construction, reconstruction, and maintenance of a telegraph line by the Western Union Telegraph Company along the right of way of the Southern Pacific Company, for a stated compensation to be paid by the Western Union Company, and other considerations, and, among various other matters, contains this clause:

"Section 9. Exclusive Right of Way. The Pacific Company, so far as it legally may, hereby grants and assures to the Telegraph Company the exclusive right of way along and under the lines and lands and bridges of the railroads, and any branches or extensions thereof covered by this agreement, for the construction, maintenance, and operation of lines of poles and wires and underground or other lines for commercial or public telegraph and public telephone uses or business, with the right to construct, at the Telegraph Company's own cost and expense, from time to time, such additional wires and lines of poles and wires as the Telegraph Company may require; the lines to be located on the railroad right of way, lands, and bridges in such manner as the Pacific Company may designate. The Pacific Company agrees to clear and keep clear said right of way of all trees, undergrowth, and other obstructions which may interfere with the construction and maintenance of the lines and wires provided for hereunder: Provided always that, in protecting and defending the exclusive grant referred to in the foregoing paragraph hereof, the Telegraph Company may use and proceed in the name of the Pacific Company, or of any other companies owning the railroads in respect to which this contract is made, but shall indemnify and save it and them harmless from any and all damages, costs, charges, and legal expenses incurred therein or thereby. And the Telegraph Company covenants and agrees to satisfy and comply with any and all judgments or decrees which may be obtained against the Railroad Company in respect to any of the matters in this section mentioned."

The complainant having filed its replication, further testimony was taken, and, the cause being concluded and submitted to the court, a decree was entered, by the terms of which the contract between the Western Union Tele-

graph Company and the Southern Pacific Company above referred to, "in so far as the said Western Union Telegraph Company is by said contract granted the exclusive right and privilege of occupying the right of way of the Southern Pacific Company for maintaining telegraph lines," is declared to be contrary to public policy, void, and of no effect, and further decreeing that the Southern Pacific Company is "authorized, permitted, directed, and commanded to conclude that certain agreement with the complainant, Postal Telegraph Company, mentioned in the pleadings in this case, which is in words and figures as follows, to wit," setting forth the written agreement, and enjoining the Western Union Telegraph Company, its officers, servants, agents, employés, and counsel, from interfering with the execution of the said contract.

The assignments of error are in effect that the trial court erred in overruling the demurrer of the Western Union Telegraph Company to the supplemental bill, in declaring that the contract between the Western Union Telegraph Company and the Southern Pacific Company, mentioned in the supplemental bill and set out in the answer thereto of the Western Union Telegraph Company, "in so far as the Western Union Telegraph Company is by said contract granted the exclusive right and privilege of occupying the right of way of the Southern Pacific Company for maintaining telegraph lines, is contrary to public policy, nugatory, and void, and of no effect whatever," in "authorizing, permitting, directing, and commanding the defendant Southern Pacific Company to conclude that certain agreement with the complainant Postal Telegraph Company, attached to and made a part of the supplemental complaint," in enjoining the Western Union Telegraph Company from interfering with the execution of that contract, in not dismissing the supplemental bill on the ground that the court was without jurisdiction to compel the Western Union Telegraph Company to give its assent to the execution of the contract between complainant and the Southern Pacific Company, and on the ground that the Southern Pacific Company had the right to make the execution of its agreement with the Postal Telegraph Company dependent upon the assent thereto of the Western Union Telegraph Company, and in not adjudging that the Southern Pacific Company had the right to make the execution of its contract with the Postal Telegraph Company dependent upon the assent thereto of the Western Union Telegraph Company, and, such assent being shown to have been withheld, in not dismissing the supplemental bill.

W. D. Fenton, James E. Fenton, Ben C. Dey, and Kenneth L. Fenton, all of Portland, Or., for appellant Southern Pacific Co.

Dolph, Mallory, Simon & Gearin and Hall S. Lusk, all of Portland, Or., for appellant Western Union Tel. Co.

F. V. Holman and A. A. Hampson, both of Portland, Or., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above).  [1]  We are of the opinion that the court below was clearly right in holding the attempted grant by the Southern Pacific Company to the Western Union Telegraph Company of the exclusive right for the construction, maintenance, and operation of a telegraph line upon the railroad company's right of way void and of no effect.  A similar question came before the Circuit Court for the Southern District of California in 1894, in the cases of Mercantile Trust Co. v. Atlantic & Pacific Railroad Co. (C. C.) 63 Fed. 513, and Mercantile Trust Co. v. Atlantic & Pacific Railroad Co. (C. C.) 63 Fed. 910.  The railroad company there undertaking to make a like exclusive grant to the Western Union Telegraph Company was created under the act of Congress of July 27, 1866, entitled "An act granting lands to aid in the construction of a railroad

and telegraph line from the states of Missouri and Arkansas to the Pacific coast" (14 Stat. 292, c. 276), and in addition to contending that the attempted exclusive grant was valid, the Western Union Telegraph Company further contended that the Atlantic & Pacific Railroad Company could lawfully withhold from the Postal Telegraph Company all facilities for the transportation of its poles, wires, etc. In disposing of those contentions the writer there said, among other things:

"The Atlantic & Pacific Railroad Company was thus created, and made a great highway of communication, with the declared object of promoting the public interest and welfare. There is not a syllable in the act indicating that it was intended by Congress to be used as an instrument for the building up or fostering of any monopoly of any character, or that it should be permitted to do any act inconsistent with the objects for which it was created. If it may lawfully withhold facilities for the transportation of material and supplies for the erection of a line or lines of telegraph which may come into competition with some other line, no reason is perceived why it may not also withhold facilities for the transportation of any other kind of freight in the interest of some one or more favored persons or corporations. The Atlantic & Pacific Railroad Company is a common carrier, and common carriage must be kept open to all alike, under like circumstances and conditions. What the considerations were that induced the Atlantic & Pacific Company to make the stipulation in question is immaterial. Its purpose plainly was to prevent competition. In the present age of progress the telegraph is as essential to the needs and comforts of the public as the railroads themselves. 'Telegraphs,' said Mr. Wharton in a note to the case of W. U. Telegraph Co. v. Burlington & S. Ry. Co. [C. C.] 11 Fed. 12, 'are now essential to business, and as such are to be kept open to competition (unless the Legislature should otherwise determine), in the same way that common carriage is to be kept open to competition. An agreement to give a particular line of carriers monopoly in a state would not (without legislative aid) be enforced, nor should a contract to give a monopoly to a particular telegraph company.' The Atlantic & Pacific Railroad Company, being a common carrier, is bound to afford every telegraph company, as well as every other company or person, equal transportation facilities under like circumstances and conditions; and its agreement to withhold from any other company or person than the Western Union Telegraph Company such facilities is, in my opinion, at variance with the declared purposes for which that company was created, against public policy, in restraint of trade, and void."

To the same effect are Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 24 L. Ed. 708, and United States v. Union Pacific Railroad Co., 160 U. S. 1, 16 Sup. Ct. 190, 40 L. Ed. 319.

The attempted exclusive grant to the Western Union Company by the Southern Pacific Company of the right of way in question for telegraph purposes being void, it was and is no legitimate concern of the former how many similar rights the Southern Pacific Company should grant to others, so long as the Western Union Company's right to the existence and maintenance of its own line is unaffected. In the absence of a valid exclusive grant to that company, there is nothing in the record tending to show that its line was or could be in any way affected by the agreement made between the Southern Pacific Railroad Company and the Postal Telegraph Company, with which agreement the Western Union Company therefore had nothing whatever to do.

[2, 3] The willingness of the Southern Pacific Company, but for the objections interposed by the Western Union Telegraph Company, to execute in writing the agreement made between it and the Postal Tele-

graph Company, sufficiently appears from the record, and we are of the opinion that the court below was not in error in decreeing that the defendant railroad company execute the contract. Jeremy, in his Equity Jurisdiction, says:

"An injunction is a writ framed *according to the circumstances of the case, commanding* an act which the court regards as essential to justice, or *restraining* an act which it considers contrary to equity and good conscience."

The purpose of the case of In re Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110, was to compel certain railroad companies to afford reasonable and equal facilities for the interchange of traffic, where it was alleged that they and their employés—

"had given out and threatened that they would refuse to receive from complainant cars billed over its road for transportation by complainant to their destination, for the reason that the complainant had employed as locomotive engineers in its service men who were not members of the Brotherhood of Locomotive Engineers, 'an irresponsible voluntary association,' and that the locomotive engineers in the employ of the defendant companies had refused to handle cars to be interchanged with the complainant's road, notwithstanding that they continued to afford the other railroad companies full and free facilities for the interchange of traffic, while refusing to transact such business with the complainant, thereby illegally discriminating against it."

In the course of its opinion the Supreme Court said, among other things:

"Perhaps, to a certain extent, the injunction may be termed mandatory, although its object was to continue the existing state of things, and to prevent an arbitrary breaking off of the current business connections between the roads. But it was clearly not beyond the power of a court of equity, which is not always limited to the restraint of a contemplated or threatened action, but may even require affirmative action, where the circumstances of the case demand it. Robinson v. Lord Byron, 1 Bro. C. C. 588; Hervey v. Smith, 1 Kay & Johns. 389; Beadel v. Perry, L. R. 3 Eq. 465; Whitecar v. Michenor, 37 N. J. Eq. 6; Broome v. New York & New Jersey Telephone Co., 42 N. J. Eq. 141 [7 Atl. 851]."

In the case of Pokegama Sugar-Pine Lumber Co. v. Klamath River Lumber & Improvement Co. (C. C.) 86 Fed. 528, Judge Morrow held, among other things, that where sufficient grounds exist a court of equity has the power to and will issue, on a preliminary examination, a restraining order, though mandatory in effect and requiring affirmative action, saying, among other things, at page 533:

"It is contended that the injunction, although preventive in form, was mandatory in effect; its execution resulting in a change in the status of the parties. This contention assumes that the court will recognize the respondent as asserting, at the time the bill was filed, a claim of possession to the property under a color of right to such possession, and that the effect of the order was to oust it from that possession. But equity will not permit a mere form to conceal the real position and substantial rights of parties. Equity always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction. Pom. Eq. Jur. (2d Ed.) § 378."

The judgment is affirmed.