197 F.3d 908 (7th Cir. 1999)
 LOOPER MAINTENANCE SERVICE INCORPORATED, doing business as J.E. LOOPER CONSTRUCTION COMPANY and THOMAS H. LOOPER, Plaintiffs-Appellants,
v.
CITY OF INDIANAPOLIS and INDIANAPOLIS PUBLIC HOUSING AGENCY, Defendants-Appellees.
 No. 98-3688
 In the United States Court of Appeals For the Seventh Circuit
 Argued April 15, 1999
Decided December 13, 1999
 
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. 95 C 1611--Richard L. Young, Judge.
 Before Cudahy, Coffey and Manion, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Thomas H. Looper ("Looper"), an African-American male, owns and operates Looper Maintenance Service, Inc., d/b/a J.E. Looper Construction Co., a minority qualified construction firm in Indianapolis, Indiana. Looper sued the City of Indianapolis (the "City"), the Indianapolis Public Housing Agency ("IPHA"), IPHA Acting Executive Director Martin Williams ("Williams"), the U.S. Department of Housing and Urban Development ("HUD"), and Henry Cisneros ("Cisneros") for breach of contract, and violations of 42 U.S.C. sec.sec. 1981, 1983, 3601, and the Racketeer Influenced Corrupt Organizations Act (RICO). Because Looper failed to make proper service upon either Cisneros or HUD, they were dismissed from the action. Additionally, Williams was voluntarily dismissed from the suit at a pretrial conference. Finally, the district court granted the City's and IPHA's motion to dismiss for failure to state a claim upon which relief could be granted, and denied Looper's motion for leave to file a fourth amended complaint. We affirm.
 
 I. BACKGROUND
 
 2
 Beginning in 1982, Looper has had a number of disputes with the IPHA over the process in which various construction contracts were awarded. These previous disputes led to litigation which resulted in two settlement agreements (1982 and 1985) and a Voluntary Compliance Plan (VCP) in 1982. Under the terms of the VCP and settlement agreements, IPHA would notify Looper and other minority contractors of job opportunities. Sometime after November of 1993, Looper alleges that the IPHA failed to notify him of several construction rehabilitation projects.[1]
 
 
 3
 On December 1, 1995, Looper filed this suit in federal court alleging that the IPHA's failure to notify him of bidding opportunities and the newly adopted security and bond requirements were both retaliation for his previous lawsuits and race discrimination. Count II (Looper's complaint did not set forth any "Count I") of Looper's original complaint charged that the defendants violated the Fair Housing Act, 42 U.S.C. sec. 3601, et seq., by preventing Looper from participating in the government construction bidding process. Count III also sought recovery against all defendants under 42 U.S.C. sec. 3601, et seq., but on the theory that the alleged violations of the VCP's contractual obligations implicated Section 3601 violations. In Count IV, Looper alleged that HUD violated 42 U.S.C. sec. 3601 by failing to require IPHA to honor its contractual obligations under the VCP. Finally, Count V attempted to make out a claim against IPHA under 42 U.S.C. sec.sec. 1981 and 1983.
 
 
 4
 After being granted two extensions of time, Looper filed his first amended complaint on January 31, 1997, over one year after he filed the original suit. Looper's first amended complaint was nearly identical to his original complaint,[2] and appears to have been filed simply to reflect the fact that Cisneros and HUD had been dismissed from the action six months before, although this was not entirely accomplished.[3] In Looper's first amended complaint, he failed to make any allegations against the City. Based on this, the City moved for complete dismissal of all counts against it under a theory of cause abandonment, and Williams and IPHA moved for partial dismissal of Counts II, III, and IV as to them for failure to state a claim upon which relief can be granted. The magistrate judge denied the motions to dismiss and ordered Looper to file a second amended complaint on or before November 24, 1997.
 
 
 5
 Looper's second amended complaint is virtually identical to his original and first amended complaints, including repeat references to HUD as a party-defendant, in spite of the fact that HUD had been dismissed from the suit well over a year before. Looper did add a list of construction projects opened for bidding during Williams' tenure as IPHA Acting Director, a slightly different averment against IPHA for allegedly not complying with the VCP and previous settlement agreements, and a Count VI allegation of RICO violations, but the document otherwise appears to be a photocopy reproduction of the two previous complaints. In fact, Looper's counsel admitted to the magistrate judge, at the February 27, 1998 pretrial conference, that the majority of the second amended complaint was a photocopy of the previous complaint. At this conference, the magistrate judge extended a third opportunity to Looper to amend his complaint even though more than two years of discovery and pre-trial litigation had transpired.[4]
 
 
 6
 Looper filed his third amended complaint on March 12, 1998.[5] In his third amended complaint, Looper pleads four counts against both remaining defendants, the City and IPHA: (Count 1) 42 U.S.C. sec. 3601, et seq.; (Count 2) 42 U.S.C. sec. 1983; (Count 3) a state law claim for breach of contract; and (Count 4) 42 U.S.C. sec. 1981. The defendants moved to dismiss the third amended complaint for failure to state a claim upon which relief could be granted. The trial judge granted the defendants' motion to dismiss Counts I, II, and IV pursuant to Fed. R. Civ. P. 12(b)(6), and further, declined to exercise supplemental jurisdiction over the remaining breach of contract claim set forth in Count III.
 
 
 7
 Subsequently, Looper filed a motion to reconsider the order of dismissal, alternatively seeking leave to file a fourth amended complaint. No proposed amended complaint was attached to this motion and Looper made no argument as to why he should be permitted to amend his complaint for a fourth time. The judge denied both the motion for reconsideration and the motion to file a fourth amended complaint.
 
 II. DISCUSSION
 
 8
 On appeal, Looper argues that the judge "did not take as true well-pled factual allegations in [his complaint], and drew inferences against, rather than for" him. Rule 12(b)(6) dismissals are reviewed de novo. See Herdrich v. Pegram, 154 F.3d 362, 369 (7th Cir. 1998) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "In reviewing a grant of dismissal, we must take as true all factual allegations in the plaintiff's pleadings and draw all reasonable inferences in his favor." Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 502 (7th Cir. 1998) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir. 1996)). Further, "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Finally, a complaint must allege facts bearing on all material elements "necessary to sustain a recovery under some viable legal theory." Herdrich, 154 F.3d at 369.
 
 A. Federal Claims
 1. Count I
 
 9
 Count I charged that the City and IPHA violated provisions of the Fair Housing Act ("FHA") and his rights under 42 U.S.C. sec. 3601, et seq., by "unlawfully discriminating against [Looper], on account of [his] race . . . by failing and refusing to afford [him] an opportunity to participate in the procurement process of construction projects in the City of Indianapolis." Under the FHA, an "aggrieved person" may commence a civil action to obtain appropriate relief from a discriminatory housing practice or real estate transaction-related breach. 42 U.S.C. sec. 3613(a)(1)(A). An "aggrieved person" includes any person who claims to be injured, or believes he will be injured, by a "discriminatory housing practice." 42 U.S.C. sec. 3602(i). In turn, a "discriminatory housing practice means an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." 42 U.S.C. sec. 3602(f).
 
 
 10
 Sections 3604, 3605, and 3606 treat discrimination in the sale or rental of housing, residential real estate-related transactions, and provision of brokerage services, respectively, and Section 3617 prohibits interference, coercion, or intimidation respecting any right granted by those sections. See 42 U.S.C. sec.sec. 3604, 3605, 3606, and 3617. It is readily apparent from a reading of these statutes that Looper's complaint does not fall within the parameters of these sections because the construction bids he complains about are neither the "sale or rental" of property. With respect to Count I, we agree with the trial judge that Looper failed to state a claim upon which relief can be granted.
 
 2. Count II
 
 11
 Count II of Looper's third amended complaint alleges that the defendants violated his rights under 42 U.S.C. sec. 1983, by discriminating against him on the basis of race, under color of state law, and by denying him a "right to contract on the same terms and under the same conditions as Caucasians." As the Supreme Court has stated before, municipalities and other government entities are "persons" within the meaning of 42 U.S.C. sec. 1983, and as such, they can be "sued directly under sec. 1983 for monetary, declaratory, or injunctive relief [provided] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 690 (1978). But, the government may only be sued under Section 1983 "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91 (emphasis added). Thus, in order for a claimant to prevail on a Section 1983 claim against a municipal corporation, he or she must establish that the violations were part of a custom or policy of the municipality. See id. at 692, 98 S.Ct.2018
 
 
 12
 As we observed in Baxter, three types of municipal policy variants implicate Section 1983 when constitutional rights are violated: 1) an express policy, see Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 734-35 (7th Cir. 1994); 2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality opinion) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970); and 3) the actions of a person with "final policymaking authority." Praprotnik, 485 U.S. at 123 (internal quotations omitted).
 
 
 13
 In his third amended complaint, Looper alleges that "[t]he circumstances surrounding and incidents leading up to Defendants' intentional violation of Plaintiffs' rights to equal protection of the law, constitute a pattern of unlawful activity designed to exclude Plaintiffs from fair and equal participation in IPHA's bidding process." Looper's third amended complaint fails to allege that the City's or IPHA's failure to notify him of construction bid opportunities was the result of a municipal policy or custom of excluding African-Americans from the construction rehabilitation bid process under any of these three categories identified by relevant case law. Initially, Looper does not, with his allegation of a "pattern of unlawful activity," allege that this "pattern" is the result of an express municipal policy. Looper's complaint also fails because he does not assert that the alleged "pattern" is a widespread practice that, although not codified in written law or regulation, is so permanent and well- settled that it has the force of law. Finally, Looper fails to allege that a final policymaker took any unconstitutional action against him within the meaning of 42 U.S.C. sec. 1983. In fact, Looper's third amended complaint fails to name a municipal actor with final policymaking authority as a defendant.
 
 
 14
 In spite of this defect, Looper's counsel claimed at oral argument that a single act motivated by the intent to deny Looper equal bidding access because of his race could constitute municipal policy within the meaning of 42 U.S.C. sec. 1983. See Baxter, 26 F.3d at 735. While we agree that this is an accurate statement of the law, it is true only when the act complained of is accomplished by a defendant with final policymaking authority. See id. ("A necessary corollary of this point . . . is that it must first be alleged adequately that a defendant is a final policymaker. Only then can a court proceed to the question of whether the single act or decision of that defendant constituted municipal policy."). As previously stated, Looper's third amended complaint names only the City and IPHA as defendants. The City and IPHA are municipal entities, not individuals with final policymaking authority. Accordingly, Looper has failed to allege that any named individual possessed final policymaking authority and that such an individual denied him a constitutional right within the meaning of 42 U.S.C. sec. 1983.
 
 
 15
 Even if we were to assume that Looper's allegation of a "pattern of unlawful activity" did constitute a sufficient allegation of municipal policy or custom, his complaint still fails to state a viable claim for relief because, as we held previously, "[b]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient." Sivard v. Pulaski County, 17 F.3d 185, 188 (7th Cir. 1994) (quoting Rodgers v. Lincoln Towing Serv., Inc., 771 F.2d 194, 202 (7th Cir. 1985)). Furthermore, "[t]he absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of Section 1983 liability devoid of any well-pleaded facts." Baxter, 26 F.3d at 736 (quoting Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir. 1985)). Looper failed to plead facts sufficient to allow a reasonable inference that the City's and IPHA's failure to send him bid notification cards resulted from an unconstitutional policy of discriminating against him based on race, and therefore, we are of the opinion that the district court properly dismissed Count II of Looper's third amended complaint for failing to state a claim upon which relief can be granted.
 
 3. Count IV
 
 16
 In Count IV, Looper alleged violations of 42 U.S.C. sec. 1981. Again, as in his Section 1983 claim, Looper must "show that the violation of his 'right to make contracts' protected by sec. 1981 was caused by a custom or policy within the meaning of Monell and subsequent cases." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735-36 (1989); see also Federation of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1216 (9th Cir. 1996). But, as stated previously, Looper fails to allege the "policy or custom" requirement on the part of any of the defendants. Looper argues that because we must, upon review of a Fed. R. Civ. P. 12(b)(6) motion to dismiss, resolve all reasonable inferences in the non- moving party's favor, he has pled sufficient facts to survive a motion to dismiss.
 
 
 17
 We disagree.
 
 
 18
 On appeal, Looper states that if he was "excluded from equal opportunity in the bidding process . . . , then every single contract that [he was] not allowed to bid on would represent an instance that [his] constitutional rights were violated." He goes further and claims that he is "entitled to the reasonable inference that the reason [he was] excluded over such a long period of time was because Defendants maintained a custom or policy of excluding African-Americans from the bidding process . . . ." Finally, even though Looper failed to name any final decision maker as a defendant, he claims he is "entitled to the inference that Defendants' decision makers maintained and endorsed the custom of discriminating against plaintiff." In Baxter, we stated that, "[a]lthough at this stage of the litigation [a motion to dismiss] we must draw all reasonable inferences in favor of [Looper], the inferences [he] ask[s] us to draw are too attenuated to be reasonable." Baxter, 26 F.3d at 736. Therefore, we agree with the trial judge that Looper failed to state a claim upon which relief can be granted as to Count IV.[6]
 
 B. Leave to File Amended Complaint
 
 19
 Lastly, Looper argues that the district court erroneously denied his motion to file a fourth amended complaint; a decision we review for an abuse of discretion. See Crim v. Board of Educ. of Cairo Sch. Dist. No. I, 147 F.3d 535, 547-48 (7th Cir. 1998). We have previously held that "[a] trial judge is particularly well-situated to judge the worthiness of a plaintiff's motion to amend his complaint, having been involved in the progress of the case throughout its development and having viewed first-hand the party's diligence or lack thereof." Bohen v. City of
 
 
 20
 E. Chicago, Ind., 799 F.2d 1180, 1185 (7th Cir. 1986).
 
 
 21
 In this case, Looper was given three opportunities to amend his complaint to state claims upon which relief could be granted and yet made no appreciably substantive changes to the complaint. We must not lose sight of the fact that Looper's first and second amended complaints were almost identical to his original complaint, and that Looper's second amended complaint included repeat references to HUD as a party- defendant, in spite of the fact that HUD had been dismissed from the suit well over a year before. Looper's counsel, in fact, admitted that the majority of the second amended complaint was a photocopy reproduction of the two previous complaints. Despite these failures, Looper was extended yet another opportunity to amend his complaint. Looper filed his third amended complaint after more than two years of discovery and pre-trial litigation. As discussed in length above, Looper's third amended complaint still failed to state a claim upon which relief could be granted.
 
 
 22
 We have stated on numerous occasions that leave to amend need not be given if there is an apparent reason not to do so, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Payne v. Churchich, 161 F.3d 1030, 1036 (7th Cir. 1998) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)) (emphasis added). In this case, Looper was given three opportunities to amend his complaint, and yet he was still unable to state a claim for relief. As such, we are of the opinion that the district court did not abuse its discretion in denying Looper leave to file a fourth amended complaint.
 
 C. Motion for Reconsideration
 
 23
 Looper subsequently filed a motion to reconsider the order of dismissal, alternatively seeking leave to file a fourth amended complaint but failing to attach a proposed amended complaint, and Looper made no argument as to why he should be permitted to amend his complaint for a fourth time. Instead, Looper seems to have believed that he was entitled to amend his complaint post- judgment as a matter of course; nothing could be further from the truth. As this court noted in Twohy,
 
 
 24
 [Looper] failed to file an amended complaint with his . . . Rule 59(e) motion to amend the judgment order and request for leave to file an amended complaint. Indeed, plaintiff never tendered an amended complaint to the district court . . . . Contrary to plaintiff's understanding, the normal procedure is for the proposed amendment or new pleading to be submitted with the Rule 15(a) motion . . . . such a failure certainly indicates a lack of diligence and good faith . . . . Plaintiff's failure to explain why an amended complaint could not be filed with his motion, or filed at any other time, and his failure to indicate to the court the contents of the proposed amendment reinforce our conclusion that the delay caused by plaintiff was unreasonable and that justice did not require that [Looper] be granted leave to amend.
 
 
 25
 Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185, 1197 (7th Cir. 1985) (citations omitted).
 
 
 26
 Accordingly, the judgment of the district court is
 
 
 27
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Around this time, IPHA began requiring bid security and performance bonds for the construction work it contracted out.
 
 
 [2]
 Identical, also, in respect of its lack of any "Count I." This omission continues through the second amended complaint, but is finally remedied in the third, and final, amended complaint.
 
 
 [3]
 It is certainly true that Cisneros and HUD were deleted from the caption of the first amended complaint, but HUD remained listed as a party and Count IV continued to charge HUD with violating 42 U.S.C. sec. 3601, et seq.
 
 
 [4]
 It was at this conference that Looper agreed to dismiss Williams from the complaint.
 
 
 [5]
 Looper incorrectly denominated this filing as his fourth amended complaint. While it is true that this is Looper's fourth complaint, it is his third amended complaint.
 
 
 [6]
 We note that the district court's dismissal of Looper's state law claims was proper because the law is clear that a district court is empowered to decline jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. sec. 1367(c)(3).