Stanley J. HYNEK, Kelley Farms, Inc., Evelyn Kelley, Richard Kelley, and Mark Mrozinski, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

MCI WORLD COMMUNICATIONS, INC., MCI Worldcom Network Services, Inc., Williams Communications Group, Norfolk Southern Railway Company, Consolidated Rail Corporation, and Pennsylvania Lines LLC, Defendants.

No. 3:00cv758AS.

United States District Court,
N.D. Indiana.
South Bend Division.

May 20, 2002.

Irwin Lewin, Eric Pavlack, Scott Gilchrist, Indianapolis, IN, for Petitioner.

George E. Purdy, Alan S. Townsend, V. Samuel Laurin III, Indianapolis, IN, for Respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the court on the Defendants', Norfolk Southern Railway Company, Consolidated Rail Corporation, and Pennsylvania Lines, LLC (collectively, "Railroad Defendants"), motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This court has jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1332; 1441.

### I. BRIEF BACKGROUND

This action involves a dispute over the burying and construction of fiber optic cable lines beneath a railroad corridor in northern Indiana. Specifically, the dispute centers around the property interests retained by the various Railroad Defendants in this action and whether they retain the right to transfer those interests via a license to a third party licensee without having to compensate the adjacent landowners for that license. The Plaintiffs, (collectively referred to as "Adjacent Landowners"), consist of various private individuals who own property adjacent to the railroad corridor. The Defendants are comprised of two groups. The first group consists of the Railroad Defendants, the authors of the instant motion before the court. The Railroad Defendants allege that their various ownership rights in the railroad corridor range from fee simple to an easement. However, for purposes of this motion it is assumed that the Railroad Defendants' ownership interests are mere easements. The second group of defendants consists of various communications companies involved in the burying and con-

struction of fiber optic cable line. This group of defendants is not a part of the motion currently before the court. It is the Railroad Defendants assertion that, as a matter of law, railroad companies in Indiana holding right-of-way easements for railroad purposes have the legal right to license the use of their railroad corridor for the purpose of installing fiber optic communication lines without being required to seek permission from or compensate the holders of the fee simple interest in the railroad corridor.

## II. JURISDICTION

The court begins with a brief word about the proper invocation of subject matter jurisdiction in this matter. Here there is no dispute that complete diversity exists with respect to the parties in this case. However, pursuant to *Isaacs v. Sprint Corporation*, 261 F.3d 679 (7th Cir.2001), this court requested that all parties submit supplemental memoranda to ensure that the amount in controversy requirement under 28 U.S.C. § 1332 was properly met. Both the Plaintiffs and the Defendants concede that the value of the matter in controversy exceeds $75,000 with respect to the claims of each named Plaintiff. The Plaintiffs seek various forms of damages including compensatory damages, restitution, punitive damage and injunctive relief, the amounts of which greatly exceed the amount in controversy requirement.

Furthermore, the Defendants cite to the negative economic impact that would result if the Plaintiffs were granted injunctive relief. See *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 977 (7th Cir.2000). Specifically, the Railroad Defendants contend that the loss of future licensing payments and the cost of removing the fiber optic cable from the railroad corridor alone would easily meet the jurisdictional amount. Therefore, the court finds that subject matter jurisdiction in this case has been properly invoked.

## III. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) may only be granted when either: 1) the plaintiff fails to assert a legal theory that is cognizable as a matter of law; or 2) the plaintiff has failed to allege the appropriate facts under a recognized legal theory. *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 858 (7th Cir.2002)(Plaintiff's complaint dismissed because of its failure to state a claim as a matter of law); *Smilecare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir.1996), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996). Here the Defendants are moving for dismissal upon the former. See *Looper Maintenance Service Inc. v. City of Indianapolis*, 197 F.3d 908 (7th Cir.1999) (A complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.).

A pure question of law challenging the legal as opposed to the factual sufficiency of a complaint is a particularly prime candidate for disposition at the motion to dismiss level. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir.1997); See also *Marcuccilli v. Ken Corp.*, 766 N.E.2d 444 (Ind.Ct.App.2002) ("motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim"). The Adjacent Landowners note that such a dismissal should not be granted "as long as it is possible to hypothesize facts, consistent with the complaint, that would make out a claim" citing *Graehling v. Village of Lombard, Illinois*, 58 F.3d 295, 297 (7th Cir. 1995). Furthermore, they suggest that such a deferential approach should be taken by the court in evaluating this case. However, they do not identify any facts that would allow them to recover if the position of the Railroad Defendants is cor-

rect on the rule of law regarding the scope of easements for railroad purposes nor do the identify any further discovery needed to address the legal arguments presented by the Railroad Defendants. Rather, the Adjacent Landowners apparently concede that the legal question as framed by the Railroad Defendants is dispositive of their claims and those facts in support of their claims alleged in the first amended complaint.[1]

## IV. DISCUSSION

The advent of modern day communication lines consisting of fiber optic cable has transformed the way information is disseminated. Like telephone and telegraph lines, fiber optic cable must be laid across great distances to reach the various end users of the communication lines. Again much like the telephone and telegraph lines installed in earlier years, railroad corridors provide an ideal site for the installation of the fiber optic cable because of the hundreds of miles of straight and level grade which comprise the railroad corridors. Not surprisingly, the use of such railroad corridors has brought about a multitude of litigation in numerous states concerning who has the right to allow the installation of the fiber optic cable and who should be compensated for allowing the installation and use of the cable. Currently, in the federal judicial system alone, there are thirty-one (31) actions pending in twenty different federal districts. See *In re Telecommunications providers' Fiber Optic Installation Litigation,* Judicial Panel on Multidistrict Litigation, Docket No. 1452, April 29, 2002. At this stage of this particular proceeding, the court has been presented with the issue of whether under Indiana law an easement for railroad purposes includes within that ownership interest the right to install, operate and maintain fiber optic cable line and to license those rights to others for a fiber optic cable line. The Railroad Defendants contend that as holder of an easement for railroad purposes, they have always enjoyed this right and need not compensate the adjacent servient landowners for such a license to the fiber optic cable companies. Alternatively, the Adjacent Landowners argue that the installation of the fiber optic cable constitutes an additional burden upon their grant of the easement to the Railroad Defendants and that they should be compensated accordingly.

Several courts have addressed this issue and those cases are instructive as to the scope of the easement and the framework for analysis of what additional uses can be utilized by the railroad for the easement. Therefore, as discussed below, the court will undergo an analysis of these decisions and apply Indiana law to the principles espoused by these decisions in attempting to define the legal rights accompanying an

---

1. The first amended complaint has framed the ownership interest of the track corridors held by Railroad Defendants at issue in this action as those owned by the railroads in fee simple, limited by a covenant to use the corridors for railroad purposes (P's First Amend. Compl at ¶ 4) or under an easement limiting the use of the corridors to railroad purposes only. (Id. at ¶ 3). Therefore, the Adjacent Landowners have defined and conceded to the specific ownership interests held by the Railroad Defendants in this case. The Railroad Defendants have conceded to this characterization of their ownership interests in the track corridor for purposes of this motion only.

As stated above the Adjacent Landowners have failed to provide any additional facts that the Railroad Defendants held the track corridors in any ownership form narrower or lesser than an easement held for railroad purposes. Therefore, as stated below the court will analyze the claims with the understanding that the Railroad Defendants hold the track corridor by an easement used for railroad purposes, recognizing that some of the track corridor may be held with a greater proprietary interest.

easement held for railroad purposes. Ultimately, however, a determination of the scope of a railroad's easement must be gleaned from an analysis of Indiana statutory and common law. *Isaacs v. Sprint Corporation*, 261 F.3d 679, 682 (7th Cir. 2001) (noting that each state has different laws regarding the scope of easements and laws that have changed over the period embracing the grant of property rights to railroads). The Indiana courts have not directly addressed this increasingly important legal issue. Not withstanding this fact, both parties contend that various Indiana cases and statutes resolve the issue in favor of their respective positions. The court will address the specific authorities cited by the parties in turn. However, in light of the fact that the Indiana courts have not yet addressed the precise legal issue presented, the court must analyze the general principles involved as discussed by other courts and legal commentators as it pertains to the issues presented in this case.

## A.  RAILROAD EASEMENTS IN GENERAL

The court begins with a general overview of the nature and extent of a railroad easement. "A railroad right-of-way is a very substantial thing. It is more than a mere right of passage. It is more than an easement." *Western Union Tel. Co. v. Pennsylvania R.R. Co.*, 195 U.S. 540, 570, 25 S.Ct. 133, 49 L.Ed. 312 (1904). One special feature of most railroad easements are their exclusive component. See *City of Maroa v. Illinois Central R.R.*, 229 Ill.App.3d 503, 514, 170 Ill.Dec. 224, 592 N.E.2d 660, 667 (1992); *Henley v. Continental Cablevision of St. Louis County, Inc.*, 692 S.W.2d 825 (Mo.Ct.App.1985). The nature of the activities conducted by the railroad requires such exclusion as to all others.

In determining the nature and extent of a railroad easement, specifically whether a railroad could contract with a third party for other uses outside of the railroad's intended use and purpose of the easement, various courts have reached different conclusions. See *Mellon v. Southern Pacific Transport Co.*, 750 F.Supp. 226 (W.D.Tex.1990)(Finding that the placement of a fiber-optic line in the easement was an incidental use within the scope of the railroad's easement); *Davis v. MCI Telecommunications Corp.*, 606 So.2d 734, 737 (Fla.App.1992) (per curiam)(Finding that the placement of the fiber-optic line was authorized by statute and constituted only a nominal burden) *compare* with *Buhl v. U.S. Sprint Communications Co.*, 840 S.W.2d 904 (Tenn.1992)(Finding that the fiber-optic line had no railroad purpose only commercial purposes and therefore was beyond the scope of the easement).

These cases appear to focus on the following criteria in determining whether a railroad right of way subject only to an easement in the railroad corridor can be further burdened by a fiber optic cable line: 1) the extent of the burden that the additional fiber optical cable places upon the railroad easement;[2] *Mellon*, 750

---

**2.** For example cases involving the construction of telegraph and telephone lines were found to be within the scope of the easement for railroad purposes when the lines were used by the railroad. *Western Union Tel. Co. v. Postal Tel. Co.*, 217 F. 533 (9th Cir.1914); *Pacific Postal Tel. Cable Co. v. Western Union Tel. Co.*, 50 F. 493 (C.C.D.Wash.1892). However, as those cases demonstrate, the construction of such lines were essential for the safe and efficient operation of the railroad and therefore clearly furthered the railroad's purpose. Furthermore, courts have found that even if installation of telegraph or telephone lines created a mixed purpose, meaning a railroad benefit and non-railroad benefit, an additional burden is not created. See *Mississippi Invs. v. New Orleans & N.E.R. Co.*, 188 F.2d 245, 247 (5th Cir.1951); *Mitchell v. Illinois Cent. R.R. Co., supra*, 384 Ill. 258, 51 N.E.2d 271, 274 (1943); *Dickman v. Madison*

F.Supp. at 231; *Davis*, 606 So.2d at 737; 2) whether the fiber optic cable can be considered as necessary or for the benefit of the railroad's purpose or whether it is purely for nonrailroad commercial purposes;[3] *Mellon*, at 230–31; *Buhl*, 840 S.W.2d 904; and 3) whether the placement of such a fiber-optic cable line is permitted under statutory law. *Davis*, 606 So.2d at 737. Because of the focus placed by these cases on the issue presented in this case, the court will revisit these factors after undergoing an analysis of the Indiana authorities presented by the parties.

## B. INDIANA LAW PERTAINING TO THE SCOPE OF A RAILROAD EASEMENT

No Indiana case or statute directly addresses the scope a railroad easement or the extent to which it may be used for either railroad purposes, mixed railroad and nonrailroad commercial purposes or purely nonrailroad commercial purposes. However, both sides have argued that various statutes or cases by implication support their position or detract from their opponents' stance.

The Adjacent Landowners contend that *Muncie Electric Light Co. v. Joliff*, 59 Ind.App. 349, 109 N.E. 433 (1915) provides ample support for their position that a railroad may not license the use of the easement for the installation of a fiber optic cable line to a third party. In *Joliff*, the court was asked first to determine whether the evidence at trial supported

certain findings made by the trial court. 109 N.E. at 434–35. Next, the court was asked to determine whether as a matter of law the electric company was permitted to construct its line along the railroad easement under the statutory authority granted by Section 38 of the Act of 1905. *Id.* at 436. A careful review of *Joliff* fails to demonstrate that the court addressed the question presented by this case (i.e. the extent to which a railroad can license the use of its easement for railroad purposes or non-railroad purposes). *Joliff* becomes problematic in that it would require the court to infer certain rights that a railroad does or does not have in the use of its property interests in the easement from the rights adjudicated solely against a utility company and not against the railroad company itself. Moreover, more recent caselaw and statutory authority infers a completely opposite result with respect to the railroad's right to license the additional uses of the railroad easement to third parties.

In *Consumers' Gas Trust Co. v. Am. Plate Glass Co.*, 162 Ind. 393, 68 N.E. 1020, 1021 (1903), the Indiana Supreme Court was called upon to decide whether a third party had the right to drill for natural gas along the railroad easement that was obtained through adverse possession. The court noted that the railroad easement was established through the occupation by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company "with a single

County Light & Power Co., 304 Ill. 470, 136 N.E. 790 (1922).

·**3.** However, where the additional use is for purely commercial purposes and not for any railroad purpose courts have determined that an additional burden has been created. See *Western Union Tel. Co. v. Rich*, 19 Kan. 517 (1878); *Canadian Pacific Ry. Co. v. Moosehead Tel. Co.*, 106 Me. 363, 76 A. 885 (1910); *American Tel. & Tel. Co. v. Smith*, 71 Md. 535, 18 A. 910, 913 (1889); *St. Louis, Iron Moun-*

*tain & S. Ry. Co. v. Cape Girardeau Bell Tel. Co.*, 134 Mo.App. 406, 114 S.W. 586 (1908); *Nicoll v. New York & N.J. Tel. Co.*, 62 N.J.L. 733, 42 A. 583 (1899); *Phillips v. Postal Tel. Cable Co.*, 130 N.C. 513, 41 S.E. 1022 (1902), rev'd on other grounds, 131 N.C. 225, 42 S.E. 587 (1902); *Hodges v. Western Union Tel. Co.*, 133 N.C. 225, 45 S.E. 572 (1903); *Teeter v. Postal Tel. Co.*, 172 N.C. 783, 90 S.E. 941 (1916); *Query v. Postal Tel.-Cable Co.*, 178 N.C. 639, 101 S.E. 390 (1919).

track railroad and *a line of telegraph poles since its entry.*" *Consumers' Gas Trust Co.*, 68 N.E. at 1021 (emphasis supplied). The court rested its decision based upon the recognition that the gas company could "draw off the gas in the common reservoir without the right of way." *Id.* The court's reading of this case indicates that the underlying servient owner may utilize the subsurface ground and natural resources lying within without interfering with the easement granted to the railroad for the purposes and enjoyment of the uses accompanying that right. *Consumers' Gas Trust* confirms two very important propositions: 1) that a railroad easement is "so far exclusive that the gas company (servient holder of the easement) was not authorized to enter upon the right of way for the purpose of drilling a gas well . . ."; 2) the scope of a railroad easement, at least one that is obtained by prescription, is confined to the railroad purposes of a right of way. *Id.* at 1021. With regard to the scope of the railroad easement, as noted in the opinion, *Consumers' Gas Trust* confirms that such an easement includes the use of communication lines i.e. "a line of telegraph poles since its entry." *Id.*

More recent legal authority demonstrates that a railroad easement may be used for certain additional uses by the railroad that are both consistent with its current uses and/or those uses that do not involve an additional burden to the servient estate. In *Ritz v. Indiana and Ohio*

*R.R., Inc.*, 632 N.E.2d 769, 775–76 (Ind.Ct. App.1994), the court was asked to determine whether the cutting of trees or the placement of a utility pole in the railroad's easement constituted a trespass and a taking. The court noted that the record revealed no dispute as to the railroad's right-of-way or that permission had been granted by the railroad to allow the utility company to utilize its easement. *Id.* at 776. This statement clearly implies that under Indiana law the railroad was well within its legal rights to allow such use of its easement by the utility company. As noted in *Ritz*, the court found that "no additional burden is cast upon the fee beyond that which was contemplated and paid for in the original taking." 632 N.E.2d at 776 citing *Fox v. Ohio Valley Gas Corp.*, 250 Ind. 111, 235 N.E.2d 168 (1968)(relying upon the reasoning of *New York Central Railroad Co. v. Yarian*, 219 Ind. 477, 39 N.E.2d 604 (1942)).

In *Calumet Nat. Bank v. AT & T*, 682 N.E.2d 785 (Ind.1997), the Indiana Supreme Court was asked to decide whether a fiber optic cable company had acquired a *valid* license to install and operate the cable from the railroad. (emphasis supplied) In interpreting the Abandoned Railroad Rights of Way Statute, Ind.Code § 8–4–35–8[4] the court determined that the land at issue had been abandoned by the railroad prior to its license to the fiber optic cable company. 682 N.E.2d at 791. The court went on to conclude that be-

---

**4.** This particular statute has since been repealed and an analogous statutory provision has been enacted in its place. See Indiana Code § 32–5–12–11 which provides in relevant part:

(a) The vesting of a railroad's interest under section 10 of this chapter does not divest a valid public utility, communication, cable television, fiber optic, or pipeline easement, license, or legal occupancy granted by the railroad before the date abandonment occurred.

(b) This chapter does not deprive a public utility, communication company, cable television company, fiber optic company, or pipeline company of the use of all or part of a right-of-way if, at the time of abandonment:

(1) the company is occupying and using all or part of the right-of-way for the location and operation of the company's facilities; or

(2) the company has acquired an interest for use of all or part of the right-of-way.

cause the easement had been extinguished "the railroad had no interest in the right-of-way to license to[ the fiber optic cable company.]" *Id.* at 791.

This decision does not discuss to what extent a railroad may license the use of the easement prior to its abandonment. However, the court would not have gone to great lengths in discussing the nature of the interest owned by the railroad (p.787), the specific timing of the abandonment of the railroad easement by Conrail (p.788), the subsequent extinguishment of the railroad easement (p. 788) and "the enforceability of a [fiber optic cable company's] license to install a fiber optic system under Ind.Code §§ 8–4–35–8" (p.790–91) had the court simply determined that the railroad did not have the right to license that use prior to any abandonment by Conrail. Put another way, if the Adjacent Landowners argument is to be accepted as the law of Indiana, the Indiana Supreme Court would have simply found that such a license by the railroad for the use of fiber optical cable would constitute an additional burden or use by the railroad and such use was outside of the scope of the easement granted for railroad purposes. This the Indiana Supreme Court simply did not do.

The Adjacent Landowners argue in response that *Calumet Nat. Bank* does not expressly address the issue presented here. A position this court does not totally disagree with. However, the Adjacent Landowners fail to address why the Indiana Supreme Court resolved the issue in the manner it did relying on the fact that the license occurred post abandonment rather than the railroad never having such authority to grant such a license to begin with. This result makes sense in light of the need for certain additional uses by the railroad of the easement it has received and the importance of the communication lines in the operation of the railroad.

## C. THE ABANDONED RAILROAD RIGHTS–OF–WAY ACT

As noted earlier, in 1995 Indiana passed the Abandoned Right–of–Way Act, Ind. Code § 32–5–12–1 *et seq.* This Act, *inter alia*, sought to protect various utility lines from being uprooted after the underlying easement upon which they were granted was abandoned. Ind.Code § 32–5–12–11(a)(b). Therefore in enacting this particular provision the Indiana legislature in essence implied that such a license was permissible even when the particular utility lines were installed in the railroad corridors not owned pursuant to a fee interest. As specifically noted by the Railroad Defendants the position advocated by the Adjacent Landowners would require the court to draw the inference that such prior conveyances, legal occupancy or license to such third-party utility companies by the railroad would have been a mistake or fraud. (See D's brief at p. 10).

## D. HISTORICAL AND PUBLIC POLICY CONSIDERATIONS

As discussed below the historical materials suggest that certain additional uses of the railroad corridors were contemplated, specifically with respect to communication lines, within the grant of an easement for railroad purposes both by the Indiana legislature and Congress. As noted by the Railroad Defendants Indiana statutory law provided explicitly:

Any railroad company ... owning or operating ... railroads in this state, is hereby authorized and empowered to construct, maintain, own, and operate lines of telegraph upon and along the route and right-of-way of the railroad or railroads owned or operated by it ... for its own and also for public or commercial uses ... and to charge, collect, and receive reasonable and customary rates for transmission of telegrams

thereupon. Ind.Code § 8–1–21–1 (repealed 1975)

This statute remained in effect for almost one hundred years from 1881 until its repeal in 1975 promoting the expansion of communication across the state of Indiana and allowing the free flow of information and in no doubt played an important role in the development of our state both in economical and social terms. Without such legislation, one can only imagine the delay in the development of such an important information transportation route.

This legislation certainly had some additional burden on the servient landowners who owned the adjacent property upon which the railroad easement stood. However, the communication lines were not only crucial to the operation of the railroads but further provided a tremendous benefit upon all who utilized the communication lines in aspects other than traveling on the railroad. These additional public benefits, along with the necessity of allowing the railroads to communicate between stations, were undoubtedly considered by the legislature at that time and were weighed in favor of allowing such an additional burden upon the servient landowner.

Additionally, in the early stages of the development of the railroad, Congress also sought to promote the construction and operation of communication lines which at that time was the telegraph. See 47 U.S.C. § 1 (Rev. St. § 3964 since repealed). That statute, passed in 1866, sought to allow the construction, maintenance and operation of telegraph lines over and along any post roads, which included, as referenced in 39 U.S.C. § 481, all railroads.

Finally, several policy considerations further support the expanded use of an easement for railroad purposes beyond those originally contemplated at the creation of the easement. See Danaya C. Wright and Jeffrey M. Hester, *Pipes,* *Wires, and Bicycles: Rails–To–Trails, Utility Licenses, And The Shifting Scope of Railroad Easements From the Nineteenth to the Twenty–First Centuries,* 27 Ecology L.Q. 351, 460. (2000). For many years the railroad has played a vital role in many areas including: transportation, communication, gas and electric and many other public needs. Id. at 461. It is well worth noting that the entire public including the servient landowners are benefitted by the installation of the fiber optic cables. Among those benefits are: "increased 911 services, emergency communications and linkages, clear and inexpensive long distance services and lower local telephone rates made possible by competition among providers." *Id.* at 463. These policy considerations lend further weight to an expansive definition of the rights bestowed upon a railroad's interest in an easement for railroad purposes consistent with the case law and statutes discussed above.

## E. APPLICATION OF THE ABOVE CONSIDERATIONS TO THE CLAIM PRESENTED

■ As noted above, the court now returns to the criteria outlined in Section A in applying the principles gleaned from cases and statutes discussed above. Specifically, the court will address these principles in light of the following: 1) the extent of the burden that the fiber optic cable places upon the railroad easement; 2) whether the installation and the operation of the fiber optic cable line is consistent or necessary for the operation of the railroad or whether it is used for purely commercial nonrailroad purposes; 3) whether the placement of the fiber-optic cable line is authorized by statute. In applying factors one (1) and two (2) to the present case, the court finds the reasoning in *Mellon* to be persuasive. In *Mellon,* then Chief Judge Bunton determined that the right-of-way surface included the top-

soil surface of the easement occupied by the fiber optic cable. 750 F.Supp. at 231. That finding was based upon the reasoning that the cable was an incidental use which was not inconsistent with railroad uses and did not burden the subservient estate retained by the plaintiff. *Id.* Similarly, the court finds that the Railroad Defendants' license to the fiber optic cable companies for the placement of the cable is not inconsistent with the purpose or current use of the railroad's easement. Moreover, the placement of the cable does not burden the subservient estate retained by the adjacent landowners beyond the current burden placed upon said easement by the current occupation by the railroad. Finally, with respect to factor three (3), as discussed in Section C above the Indiana statutory scheme supports such grants by the railroad prior to the abandonment of the railroad easement.

## V. CONCLUSION

In light of the above authorities and reasoning, the court finds that the Plaintiffs have failed to state a claim as a matter of law against the following Defendants, Norfolk Southern Railway Company, Consolidated Rail Corporation, and Pennsylvania Lines, LLC. Therefore their claims against these particular Defendants must now be **DISMISSED.** The clerk is instructed to enter an order dismissing Norfolk Southern Railway Company, Consolidated Rail Corporation, and Pennsylvania Lines, LLC from the above entitled action. **IT IS SO ORDERED.**