606 So.2d 734 (1992)
George I. DAVIS and James Calvin Davis, as Trustees of the Eugene Moor Davis Family Trust; Foster Gilmore Davis; Emily Davis Jenkins; George I. Davis; Eugene Moor Davis, Jr.; James Calvin Davis; Preston Tatum Davis; Lillian Davis Byrd; and William C. Forbes, As Personal Representative of the Estate of Mary Margaret Davis Forbes, Appellants,
v.
MCI TELECOMMUNICATIONS CORPORATION, a foreign corporation authorized to do business in Florida, Appellee.
No. 91-2374.
District Court of Appeal of Florida, First District.
October 22, 1992.
Rehearing Denied November 30, 1992.
Robert M. Ervin and Robert M. Ervin, Jr., of Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, for appellants.
John R. Marks, III, Marguerite H. Davis, and Paul R. Ezatoff, of Katz, Kutter, Haigler, Alderman, Davis, Marks & Rutledge, P.A., Tallahassee, for appellee.
PER CURIAM.
We review by appeal a final judgment that dismissed, after an evidentiary hearing, *735 the Davises' complaint against MCI for unlawful entry and unlawful detention of their property. Concisely stated, the Davises contend that MCI has placed a buried fiber optic telecommunications cable along the CSX railroad right of way across their property without obtaining permission or paying compensation to them, and thus seek a determination that MCI has acted illegally and must remove its cable from the property. MCI relies on section 362.02, Florida Statutes, as authority for it to acquire from the railroad "the right to construct, maintain and operate lines of telegraph or telephone along and upon the right-of-way of any railroad in the state, and to that end is granted all powers for the exercise of the right of eminent domain... ."
The facts, issues, and rulings thereon are well described in the final judgment under review, which we quote in its entirety (all footnotes are in the judgment).
This cause came before the Court for an evidentiary rehearing upon the request of both parties.[1] The Plaintiffs Davis sought to reargue only matters of law; and the Defendant, MCI Telecommunications Corporation, Inc. (hereafter MCI), sought to present additional evidence and to reargue matters of law. After considering the motions and argument of counsel, the Court determined that the 1989 orders contained erroneous conclusions of law and mistaken findings of fact which resulted partially from the early pleadings filed by each of the parties.[2] Based upon this determination, and in an effort to give each of the parties an opportunity to correct any erroneous matters of fact or law, the Court directed that an evidentiary rehearing be held.[3]
The controlling issue on rehearing remains whether MCI has the authority to locate and maintain its fiber optic telecommunications cable in the railroad right-of-way of the CSX Transportation Corporation which traverses the Davis property in Gadsden County, Florida. MCI's cable is used principally for MCI's own commercial service to the public, but it also contains a pair of strands dedicated to the railroad communications of CSX, formerly Seaboard Coastline Railroad Company, which are used by both CSX and MCI.
On rehearing, the Davises contend that the ouster of MCI from the right-of-way, as demanded by their Complaint for Unlawful Entry and Detention, is the only proper consequence of this Court's prior ruling that Florida Statute § 362.02 does not authorize commercial telecommunications use of a railroad right-of-way without payment of compensation to the underlying fee owners. This result necessarily follows, they contend, because no eminent domain or inverse condemnation procedure is available to supply the compensation element the Court found necessary to effectuate the Section 362.02 usage as so interpreted.
Conversely, MCI sought reconsideration of the predicate ruling of law which rejected MCI's first affirmative defense  the asserted sufficiency of Section 362.02, in and of itself, to authorize MCI's usage of the right-of-way for its telecommunications cable regardless of the ownership status of the underlying fee. MCI also sought leave to submit evidence that would supply an historical context for revisiting this question of law as it related to the practical purposes for the enactment of Florida Statute § 362.02 in 1903. Over the Davis' objections, *736 the Court authorized the parties to use ordinary discovery tools to develop proofs concerning the proper construction and practical affect of Section 362.02.
In deciding this case initially, this Court placed inappropriate and excessive emphasis upon the "Final Decree"[4] which led to several incorrect factual determinations and legal conclusions set forth in the September 1989 Final Judgment. With respect to the appropriate, legal significance to be ascribed to the 1961 decree, it is now apparent that the purpose of that litigation was to settle a controversy between the Davises and Seaboard concerning the grade crossing at the former site of the Davis Brickworks.[5] This was not an eminent domain proceeding, as initially determined; and in no way did the decree impair the railroad's right to maintain its right-of-way and track over the property in question; nor the concomitant rights of telecommunications interests under Florida Statute § 362.02.
In contrast to this, the Court finds it determinatively significant that this railroad right-of-way has existed since 1863; was aided in its creation by the fledgling Florida government and federal government; was in place when the predecessor of Section 362.02 was enacted in 1903, and when the Davises began acquiring this land in 1905; and was occupied by Western Union's commercial telegraph lines for many decades before the Seaboard v. Davis dispute in 1960-61.
The historical evidence adduced on rehearing conclusively establishes that the railroad through eastern Gadsden County was constructed in 1863, during the Civil War. The rights-of-way[6] for this railroad line were granted to the Pensacola & Georgia Railroad Company (Seaboard and CSX's predecessor) in the 1850's by Congress and the Florida Legislature, respectively.
The public records and the railroad's own Right of Way and Track Map prepared for the Interstate Commerce Commission in 1918 show right-of-way muniments of title which are varied and quite sparse in eastern Gadsden and western Leon Counties. The few private deeds and the public grants which are the 19th-century muniments of record title uniformly describe what they granted for the passage of rails and trains as "right-of-way" for a railroad.
A nexus between railroad and commercial telegraph facilities is found throughout the historical record. Acts of Congress in the 19th Century required railroads that had been granted right-of-way passage through United States lands to make their telegraph facilities broadly available for governmental, commercial and all other purposes. Likewise, the State of Florida by the "telegraph act" of 1903, now Florida Statute § 362.02 expressly authorized telecommunications lines in railroad rights-of-way.
At least as early as the 1920's, under the authority of this statute, Western Union Telegraph Company, with Seaboard's consent, erected a telegraph line across these lands which it maintained and commercially operated for public and railroad communication purposes, at least until the late 1950's. Mr. Eugene M. Davis assembled this Gadsden County property beginning in 1905, and his Ochlockonee Brick Company manufactured and shipped brick by rail until it finally closed in the late 1940's or early 1950's. Throughout these years Western *737 Union's lines and poles continued in use in the right-of-way across the Davis lands.
This commercial telegraph service was accessible to the public through agentoperators jointly employed by Seaboard and Western Union at Seaboard's depot in Midway. Polk's 1927-1928 directory reported Western Union as among commercial enterprises in Midway, and a Western Union sign on the wall outside the depot also so declared.
Until the filing of this action in 1988, there is no record nor apparently any family memory of any objection by Mr. Davis or his successors to Western Union's obvious presence in the right-of-way.
This Court finds that this historical record is relevant to show the circumstances in which Florida Statute § 362.02 was enacted, and to show its usage for many years in the public interest it was enacted to secure. This statute is thus illuminated by the practical construction afforded it by those who were most affected for many years: the railroads, the telegraph and telephone companies, the State, and the underlying owners of land interests up and down these rights-of-way. This record tends also to refute the Davises' claim that Florida Statute § 362.02, if construed to authorize MCI's use of the right-of-way, takes from the Davises a property interest that is protected from takings by the United States and Florida Constitutions.
Ch. 5211, § 1, Florida Laws (1903), now Florida Statute § 362.02 (1989) (emphasis added) provided as follows:
Any telegraph or telephone company now organized or which may hereafter be organized under the laws of this or any other state shall have the right to construct, along and upon the right-of-way of any railroad in the state, and to that end is granted all powers for the exercise of the right of eminent domain; provided, the ordinary travel or use of said railroad is not interfered with by reason thereof; and provided further, that no pole shall be erected nearer than 20 feet from the outer edge of the track, unless by consent of the railroad company.
Considering the language of the statute itself; its motivation by antecedent Acts of Congress; the uniform results the 1903 Act evidently intended throughout Florida; the damage that would be inflicted if disparity rather than uniformity were now to be judicially declared; and the practical construction that § 362.02 has received from the State, the railroads, and the affected public all these years; the Court can come but to one conclusion  that Florida Statute § 362.02 fully warrants MCI's usage of this right-of-way easement without need for either consent by or compensation to underlying interests such as are held in this case by the Plaintiffs Davis.
The Court's decision on rehearing is controlled by this statute in historical context, rather than by the judicial doctrine of "incidental use" as exemplified by decisions of other jurisdictions, some of which were discussed in the 1989 Judgment. This Court remains reluctant to give the judicially created "incidental use" theory initial effect in Florida. Hoffman v. Jones, 280 So.2d 431 (1973). The meaning and effect of the statute is another matter, however.
Nothing in the text of § 362.02 suggests a legislative purpose to confine its effect only to railroad rights-of-way that are held in fee simple title. On the contrary, the terms of the statute indicate the broad and uniform purpose to add telecommunications to all Florida railroad rights-of-way, whether the railroad's formal title is held in fee simple or is rather an easement overlying other interests in the land. For example, Sections 3 and 7 of Ch. 5211, as amended, Florida Statute § 73.161 (1989), expressly admit telegraph lines to the right-of-way either by the railroad's sole consent or, "if any telegraph or telephone company fails to secure the consent of any railroad ... for such right or privilege," then by a judgment in eminent domain subjecting the railroad's interest alone to the added usage. The statute declares, *738 "only the interests of such parties as are brought before the court shall be condemned in such action." [See § 73.161(2) and (3)].
If these provisions are to be given effect,[7] then the statute must be construed as creating the concomitant use wherever there are railroad rights-of-way; and however they are formally titled. Those provisions would be rendered nugatory by an interpretation that the statute requires and relies upon other judicial remedies not specified, to accommodate underlying land interests.
Beyond its duty to give effect to all these provisions, the Court should if possible give the statute effect according to its evident purpose. This apparently was the same motivation for earlier statutes aiding in the construction of railroads across the State. See Seaboard Air Line Ry. Co. v. Board of Bond Trustees, etc., [91 Fla. 612] 108 So. 689 at 693 (1926). Chapter 610, Laws of 1855, created railroad rights-of-way in public lands in order to spread the benefits of public transportation through the State. For like purposes, Ch. 5211, Laws of 1903, authorized telegraph and telephone usages in those public ways, in order to spread public communications in the same fashion.
The telegraph act would have been entirely futile if it depended on the assumption that all Florida railroads had obtained their rights-of-way years before in fee simple title. Except to site a station house or similar land use here and there, the railroads had no need or desire for any interest except "right-of-way."
Another compelling consideration in the case is the unvarying practical construction that those most likely to be affected, including the Davis family, placed on this Seaboard right-of-way and on the statute authorizing its usage by Western Union commercial telegraph, over so many years. From the 1920's through the 1950's, virtually every public and private interest that might have affected treated this right-of-way as properly accommodating the commercial telegraph lines of Western Union. The government that regulated railroad companies and the telegraph companies, the companies themselves, and the private landowners abutting the underlying right-of-way, including the Davises, placed their own practical, construction on the right-of-way and on the statute, approving the usage such as now is represented by MCI in the railroad right-of-way and by AT & T in the highway right-of-way.[8] Further, there was undisputed evidence that neither the Davises nor their underlying fee was in fact harmed or burdened by Western Union lines and poles extending for forty years across this railroad right-of-way through their lands. The additional burden is thus nominal or minimal at most.
In accordance with these findings and analysis, the Court concludes that Florida Statute § 362.02 has effect to authorize Defendant MCI's usage of the right-of-way, as described; and that the demand of the Plaintiffs Davis for ouster or compensation should be denied.
The remaining issues on rehearing which were settled by the Court in the October 19, 1990 Order are somewhat subsumed in the findings and determinations above. However, to the extent their resolution requires further clarification, the Court will briefly discuss them.
The Davises place great emphasis on the legal nomenclature to be ascribed to the railroad's interest in the property in question. Although there is a legal distinction between "easement" and "right-of-way," this Court finds that they are not mutually exclusive and that either, when used in a proper sense, aptly describes the railroad's interest. In any event, whether the interest in land is termed an easement or right-of-way is *739 not dispositive of the controlling legal issue in this case. As it pertains to this action, the distinction is without a difference.
With respect to each parties' contention that res judicata bars re-litigation or reconsideration of issues previously determined in this case, these contentions are rejected. Diaz v. Public Health Trust of Dade Co., [Public Health Trust of Dade County v. Diaz] 529 So.2d 682 (Fla. 1988); Holman v. Ford Motor Co., 239 So.2d 40 (1st DCA 1970). Further, the Court rejects MCI's contention on rehearing that the Davises acquiescence of the State's and another telecommunication company's usage of its property interest on U.S. Highway 90 results in an acquiescence to MCI's usage of its property underlying the railroad right-of-way in question. Accordingly, it is
ORDERED AND ADJUDGED as follows:
1. Rehearing and reconsideration are granted to both the Plaintiffs Davis and to MCI Telecommunications Corporation to the extent to the extent and for the purposes stated in this Final Judgment.
2. Plaintiffs' Complaint for Unlawful Entry and Unlawful Detention and the Defendant's Counterclaim are dismissed. Defendant's First Affirmative Defense as amended is sustained as a matter of law.
3. The September 26, 1989 "Final Judgment" and October 17, 1989 corrective order are replaced to the extent of any inconsistency with this Judgment.
4. Any issues set forth in this cause which have not been decided by this Judgment are moot.
5. Each party shall bear their respective costs.
The Davises raise six points on appeal, but we see no meaningful purpose to be served by discussing them in detail, as none of the points requires reversal of the judgment. We find no error in the trial court's ruling. We are particularly persuaded by the record showing that when the Davis family acquired this property in 1905, section 362.02 was in full force and effect and authorized telecommunications companies such as Western Union to place, with the railroad's consent, telegraph communication lines on poles and cross-bars erected along the railroad tracks to serve the communications needs of both the railroad and Western Union customers. Unlike the many wire lines on Western Union's telegraph poles, MCI's fiber optic telecommunications cable is less than one inch in diameter, is buried approximately three feet deep, and is used for telephone and other telecommunication purposes, both by the railroad for its own communications needs and by customers of MCI for communications purposes. Certainly, the MCI cable imposes no greater obstruction along the railroad than the former Western Union lines.
The judgment entered in the lawsuit between the Davises and the railroad in 1961 merely confirmed the railroad's legal right to place and maintain its tracks across the Davises' land, and that right, whether it be characterized as an "easement" or "right of way," was sufficient to fall within the statutory right of telephone and telegraph companies to acquire from the railroad alone the right to place communication lines, whether above or below ground, along the railroad within the easement or right of way being used and maintained by the railroad. The trial court's ruling on this issue is correct.
While we do not address each particular finding of fact recited in the appealed judgment, we have reviewed the record and now conclude that all findings of fact material to our decision are fully supported by evidence of record.
No reversible error having been made apparent, the judgment is AFFIRMED.
ZEHMER, BARFIELD and WOLF, JJ., concur.
NOTES
[1] The original order was entered September 26, 1989. An amended order was entered October 17, 1989. An appeal was taken, however the appeal was dismissed by the First District Court of Appeal on the grounds that the order was not a final order.
[2] Specifically, the emphasis placed upon the 1961 Final Decree entered by Judge Hugh M. Taylor.
[3] Additionally, by Order entered October 4, 1990, this Court granted MCI's Motion to Amend its answer to conform its averments (concerning the 1961 consent decree in Gadsden County Case No. 7-597) to the record as described in the Order of October 17, 1989. MCI's answer filed February 11, 1988, and specifically its first affirmative defense, is considered as amended to conform to those facts.
[4] The Court did not have the benefit of the court file in Seaboard Air Line Railroad v. Davis, et al., Gadsden Circuit Case No. 7-597 (1961) until consideration of Plaintiffs' Motion to Alter or Amend in October 1989.
[5] The decree is limited in its application to the Davises' property in Section 15, Township 1 North, Range 2 West, the location of the former brickyard business. It had no application to the remainder of the right-of-way and property in question which runs through Sections 22 and 23.
[6] The standard width of the railroad rights-of-way was 120 feet. However, the railroad was granted a 200-foot right-of-way in the north corner of the NE 1/4 of Section 22 by the legislature. The parcel of land which included this right-of-way was later acquired by the Davises "subject to such grant."
[7] The statute should be construed to give effect to all its provisions if possible. Forehand v. Board of Public Instruction, 166 So.2d 668 (Fla. 1st DCA 1964); State v. Zimmerman, 370 So.2d 1179 (Fla. 4th DCA 1979).
[8] Pursuant to Florida Statute § 362.01.