895 So.2d 1127 (2005)
CITY OF ORLANDO and Tampa Electric Company, Appellants,
v.
MSD-MATTIE, L.L.C., et al., Appellees.
No. 5D04-2098.
District Court of Appeal of Florida, Fifth District.
February 4, 2005.
Rehearing Denied March 15, 2005.
*1128 Thomas P. Callan, G. Robertson Dilg and Alison M. Yurko of Thomas P. Callan, P.A., Orlando, for Appellants.
Guyte P. McCord, III, of McCord, Bubsey & Ketchum, L.L.P., Tallahassee, and Bernard H. Gentry of Clark, Campbell & Mawhinney, P.A., Lakeland, for Appellees.
Grant Lacerte, Jr., Kissimmee, Amicus Curiae, Florida Municipal Electric Association.
TORPY, J.
In this case of first impression in Florida, we review de novo the lower court's Summary Judgment interpreting an easement in gross for overhead electric transmission lines as prohibiting the use of the easement for general telecommunication purposes.[1] Appellants, as owners of the easement, urge that they should be permitted to lease the excess capacity on their fiber optic lines within the easement to telecommunications companies for use by those companies in connection with the sale of communication services. Although Appellants advance many arguments in support of their position, the resolution of this case turns on our conclusion that the easement is unambiguous, and the use proposed by Appellants is beyond its scope. We therefore affirm the lower court.
In the early 1980's, Appellants' predecessor obtained rights-of-way for electric transmission lines through Orange, Polk, and Osceola Counties. Some of the easements were obtained through condemnation while others were obtained through negotiation. The easement in this case was obtained through negotiation with Appellees' predecessors in title. In relevant part, the easement contains the following language:
An Easement forever for a right-of-way to be used for the construction, establishment, use, operation and maintenance of one or more overhead electric transmission lines of any size or type, with the right to increase or decrease the number of poles, lines and voltage thereon, including, but not limited to necessary communication fixtures and other wires, poles, "H" frame structures, towers, anchors, guys, ground connections attachments, accessories, appurtenant equipment and any drainage desirable or convenient in connection *1129 therewith, upon, over, under and across the following described property: ... with all rights and privileges necessary or convenient for the full enjoyment or the use thereof for the above-mentioned purposes....
(Emphasis added).
The improvements that were originally constructed in the easement consisted of a power line containing three transmission wires and two copper-cored "shield" wires above the transmission lines. The shield wires protected the transmission wires from lightning strikes and were also used for internal communications purposes by Appellants from one substation to another and to the main energy control center.
In 1998, Appellants replaced the copper-cored shield wires with wire containing a fiber optic core consisting of 144 fibers each about the size of a human hair. Fiber optics is the pulsing of light by laser through a dark fiber cable that can carry thousands of digital voice circuits. The fiber optic core presently has more capacity than Appellants need for internal communications. Based thereon, Appellants now propose to allow third party telecommunications companies to use the excess fibers for a fee. They sought a declaratory judgment from the lower court that they be permitted to do so within the ambit of their existing easement. The trial court's order from which this appeal was timely taken declared:
... [Appellants] had the right to replace the shield wire with one containing a fiber optic core and utilize such wires for necessary communications in connection with the construction, establishment, use, operation and maintenance of electric transmission lines. [Appellants] do not have the right to use the wires for general communication purposes.
We have jurisdiction and affirm.
The parties agree that Appellants had the right to upgrade the technology within the easement by installation of fiber optic cables and that the fiber optic cables do not increase the physical burden on the servient estate. The parties also agree that the fiber optic cables are not "electric transmission lines." The point at which they disagree is the permitted use of these cables. Appellees contend that Appellants may only use the optics for internal communications related to the use, operation and maintenance of the electric transmission lines because any other use is outside the scope of the easement. Appellants, on the other hand, although seemingly acknowledging that the easement does not expressly permit the proposed use, argue that the proposed use would not further burden the servient estate, that the easement does not expressly exclude the proposed use, and that various public policies support allowing the proposed use.
We start our analysis by noting the fundamental legal precept that an easement, like any other contract, when unambiguous, is to be construed in accordance with its plain meaning. Walters v. McCall, 450 So.2d 1139, 1142 (Fla. 1st DCA 1984). Here, neither party urges that an ambiguity exists. Nor is there any disagreement that the first phrase in the easement language, preceding the language "including but not limited to ...," defines the scope of the easement and that the remainder of the text merely explains, but does not expand, the first phrase. Plainly, then, this easement only permits its use for the "establishment, use, operation and maintenance of... overhead electric transmission lines." As Appellants concede, a fiber optic cable is not an "electric transmission line." Its installation is only permitted under the terms of the easement to the extent that it is a necessary ancillary to the use, operation and maintenance of an electric transmission line, to wit: as a conduit *1130 for internal communications. We would reach this conclusion even without resort to the second phrase of the easement; however, the use therein of the phrase "necessary communication" eliminates even a scintilla of doubt about what was intended here. Clearly, the use of the easement for the provision of general telecommunications is not contemplated under its plain language.
Despite the clarity of the grant contained within the easement, Appellants make issue of the fact that the easement specifically fails to exclude the proposed use and does not increase the physical burden on the servient estate. We think these arguments by Appellants ignore a fundamental tenet of the law of property ownership  that property is a bundle of rights analogous to a bundle of sticks. See St. Johns River Water Mgmt. Dist. v. Koontz, 861 So.2d 1267, 1271 (Fla. 5th DCA 2003) (Pleus, J., concurring specially). Thus, the scope of an easement is defined by what is granted, not by what is excluded, and all rights not granted are retained by the grantor. Trailer Ranch, Inc. v. City of Pompano Beach, 500 So.2d 503, 506 (Fla.1986); Kitzinger v. Gulf Power Co., 432 So.2d 188, 191 (Fla. 1st DCA 1983); Jones v. City of Tallahassee, 304 So.2d 528, 532 (Fla. 1st DCA 1974). Likewise, the scope of an express easement for a stated purpose cannot be expanded to include any use merely because such use does not impose an added burden on the servient estate. Lawson v. State, 107 Wash.2d 444, 730 P.2d 1308, 1318 (1986). See Walters, 450 So.2d at 1142 ("[T]he use of an easement must be confined strictly to the purposes for which it was granted or reserved and it cannot be expanded by any change in the use or character of the dominant estate.").
Here, Appellees' predecessor only contracted to convey some, but not all, of the sticks in the bundle. All of the other sticks were retained by Appellees for their use or sale, including the right to use or convey the right to use the easement for the establishment, operation and use of telecommunications lines and ancillary equipment.[2]
Notwithstanding the foregoing, Appellants urge that the general precepts of easement law have no place here because the easement in question is a "corridor" easement. In support of their argument, Appellants rely upon decisions construing highway and railway easements such as Nerbonne, N.V. v. Florida Power Corp., 692 So.2d 928 (Fla. 5th DCA 1997) and Davis v. MCI Telecommunications Corp., 606 So.2d 734 (Fla. 1st DCA 1992). We think Appellants' reliance upon these authorities is misplaced.
Nerbonne held that the holder of the dominant estate had the right to place a power line in a right-of-way easement given for "public road purposes." Our decision there turned on what was intended by the words used in the grant. Following the majority of courts from other jurisdictions construing easements given for highway and roadway purposes, we determined that the conveyance of power was within the ambit of the road right-of-way grant because, historically, roads had been used for the delivery of communications and power. Implicit in the grant, therefore, was the right to make "adaptations of traditional highway uses made because of changing technology." Id. at 929 (quoting Fisher v. Golden Valley Elec. Ass'n., 658 *1131 P.2d 127 (Alaska 1983)). Here, no historical evidence has been shown that would lead us to the conclusion that an easement for electric transmission implicitly includes use of the easement for general telecommunications.
Davis, also cited by Appellants, addressed the right of a telecommunication company to bury a fiber optic cable in a railroad easement. The decision in that case turned on a specific Florida statute, section 362.02, which expressly permitted the proposed use. Therefore, the holder of the servient estate took title with constructive knowledge that this use was permitted. The Davis court also considered the historical use of railway easements for telegraph lines. This decision is clearly not applicable to the easement at issue here.[3]
Finally, we address Appellants' invitation that we, for various ostensible public policy reasons, broadly interpret the easement to include the proposed use.[4] We decline this invitation, which in our view would amount to a confiscatory nullification of Appellees' property rights.
We have fully considered all of the arguments and responses in this well-briefed and well-argued case. Any argument advanced by Appellants not expressly discussed herein is viewed by us to be without merit.
AFFIRMED.
PLEUS and MONACO, JJ., concur.
NOTES
[1] The supreme courts of two jurisdictions have considered this issue and reached opposite conclusions. See Cousins v. Alabama Power Co., 597 So.2d 683 (Ala.1992); McDonald v. Mississippi Power Corp., 732 So.2d 893 (Miss.1999). We reject the "apportionment" analysis in Cousins for the reasons stated in this opinion.
[2] Florida Power v. Silver Lake Homeowners Ass'n, 727 So.2d 1149 (Fla. 5th DCA 1999), relied upon by Appellants is inapposite. That case did not involve a change in the permitted use of an easement and expressly limited its application to uses that fell within the scope of the easement.
[3] In further support of this argument, Appellants rely on what they characterize as a majority of decisions of other jurisdictions that have permitted the location of telecommunication cables in railway easements as "incidental uses." Even assuming that the decisions cited by Appellants are not repugnant to Florida law, we need not address their application here because a railway easement is not involved here. For various reasons, courts of other jurisdictions have endorsed the use of railway easements for this purpose because of the nature of railway easements, not because of the nature of the proposed use. Historically, railway easements had been utilized for general communications. Moreover, for reasons of public safety, the possessory rights in railway easements are exclusive to railway authorities, thus leaving few, if any, rights to the servient estate. Even were we to follow this line of cases, therefore, we would not extend its application to the easement at issue here. Indeed, Appellants concede that the "incidental use" theory they are advocating is "generally" limited to railway easements.
[4] Appellants advance public policy considerations such as encouraging competition, reducing rates to their users and minimizing utility corridors.