DAVIS, Chief Judge,
Dissenting.
I would respectfully dissent from the majority’s decision regarding the trial court’s failure to give the requested jury instruction and would reverse for a new trial.
Patrick Neal Wolf challenges his conviction for burglary of a residence. He argues that the trial court erroneously denied his request to give a special jury instruction thereby depriving him of a defense. The facts of this case are unusual and must be fully set forth to understand the areas of the law implicated. Richard! Schmid owns title to a residential home in| Hillsborough County. In May 2010, hi *1209 began to look for another person who would be willing to rent a bedroom in the home. Following an internet search for a tenant, Schmid and Wolf negotiated a rental agreement that was reduced to a written document.[1] The agreement was a month-to-month rental agreement with no specified duration and called for Wolf to pay monthly rent of $550 on the third of each month. It required Wolf to give at least thirty days’ notice of his intent to terminate the agreement, but it was silent regarding Schmid’s rights of termination. By the agreement, Wolf was entitled to exclusive use and possession of the guest bedroom and joint possession with Schmid as to the common areas of the home, including the garage where the laundry facilities were located.
Wolf paid the first month’s rent on a prorated basis; however, he did not timely pay June’s rent. On the evening of June 8, Schmid advised Wolf that he needed to move out of the home the next day. On June 9, Wolf went to work, and Schmid stayed at home and called a locksmith to change the locks on the doors. When Wolf returned home that evening, he “complied” with Schmid’s request that he leave and gave Schmid the key to the residence. At that time, Wolf removed a few personal items but left behind some larger items of personal property, including a bicycle, a bed, and a boombox. He did not indicate to Schmid when he would return to retrieve these items.
Upon his returning to his home on June 18, Schmid found that several items of his personal property were missing. Wolfs personal property remained in the home. The next day, Schmid called Wolf on his cell phone and asked Wolf about the missing property. Wolf admitted taking the property and indicated that he had sold some of it. Wolf advised Schmid that he used the garage door opener to get into the garage and entered the unlocked door leading from the garage into the home. At trial, Schmid denied that he previously gave Wolf a garage door opener, but he did agree that under the rental agreement Wolf had access to the garage. There were no signs of forced entry.
Upon finding that his personal property was missing, Schmid called the sheriffs office and advised that he suspected Wolf of taking the property. A deputy sheriff then contacted Wolf, who voluntarily met with detectives and, after waiving his Miranda [2] rights, admitted entering the home and taking the property. Wolf was charged with burglary of a residence, grand theft, and two counts of dealing in stolen property.[3]
In order to prove that Wolf committed burglary pursuant to section 810.02(l)(b)(l), Florida Statutes (2009), the State had to show that Wolf entered the house “with the intent to commit an offense therein, unless ... [Wolf was] licensed or invited to enter.” At trial, the State presented three witnesses, Schmid and the two detectives who investigated the case. After the State rested, Wolf moved for judgment of acquittal on the burglary charge, arguing that he had a rental agreement with Schmid that gave *1210 him license to enter the home. Wolf further argued that Schmid had not given him the notice to terminate the rental agreement that is required by section 83.57(3), Florida Statutes, and that therefore Wolf continued to have legal license to occupy the premises at the time of the entry. Although Wolf did not challenge the sufficiency of the evidence related to the grand theft charge, he argued that he could not be convicted of burglary because the State failed to show that he did not have the legal right to be in the home.
The State responded that because Schmid, as the owner of the property, told Wolf to leave, Wolf no longer had the right to enter the home. According to the State, if Wolf had further rights against Schmid for improperly evicting him, his only recourse was to bring a civil action for damages. The trial court denied Wolfs motion for judgment of acquittal, concluding that the State presented a prima facie case under section 810.02(l)(b)(l).
Wolf chose not to testify, and the defense rested. Wolf renewed his motion for judgment of acquittal, and the trial court affirmed its prior ruling. At the charge conference that followed, Wolf requested a special instruction that advised the jury of the requirements of chapter 83, Florida Statutes, which deals with landlords and tenants. Specifically, Wolf requested that the jury be instructed that under section 83.57(3), in order to terminate a month-to-month lease, a landlord must give the tenant at least “[fifteen] days’ notice prior to the end of any monthly period.” Wolf argued that the jury should be advised regarding the necessary steps Schmid was legally required to take if he had wanted to terminate the rental agreement that he entered into with Wolf. Wolf pointed out that the jury should be aware of these requirements so it could determine if, in fact, he was in the home with the legal right to be there.
The trial court determined that the proposed special instruction was an accurate statement of the law but that the facts of the case did not support the giving of the proposed instruction, that the proposed instruction was misleading, and that the standard instruction was sufficient. Wolf responded that the standard instruction denied him the right to argue his theory of defense, namely that he did not commit burglary because he had a right to enter the property. Wolf also pointed out that the standard instruction provided an inference that a defendant found to be in possession of recently stolen property intended to commit a crime inside the property. According to Wolf, that inference amounted to the court instructing the jury that a burglary had occurred regardless of Wolfs right to be on the premises. Wolf maintained that for the defense to suggest to the jury that a burglary did not occur because he had the right to be in the home was futile when the court essentially advised the jury that a burglary did occur because items were taken from the house. The trial court rejected Wolfs argument and submitted the case to the jury with the standard instruction, denying the request for the special instruction.
In closing argument, Wolfs counsel admitted that Wolf committed the theft. However, he challenged the burglary charge, arguing that the State had failed to prove Wolfs intent at the time he entered the home. Counsel suggested that Wolf did not break into the home or enter by darkness of night but rather walked up to the home in broad daylight and used the garage door opener to enter the garage. He then entered the unlocked door leading from the garage into the home.[4] Counsel *1211 argued that the manner of entry did not support an inference that Wolfs intent upon entering the home was to commit a crime.
He also attempted to argue Wolfs right to be in the home:
So even if you believe that Mr. Wolf had no legal right to be there, which we’re asserting he did based on the way he was kicked out. He was not given notice, which is what Mr. Schmid required if Mr. Wolf wanted to vacate, did not afford him the reciprocal right.
The State responded to Wolfs argument as follows: “This is criminal court. This is not landlord/tenant court. So we’re not dealing with any landlord/tenant issues in this case. We are dealing with crimes.... ” The State went on to argue that after Wolf left the home on June 9, he did not contact Schmid or give any indication that he was coming back for his property. The State argued that Wolf had abandoned his personal property and had left the property for Schmid to “deal with.”
The trial court instructed the jury as follows:
To prove the crime of Burglary, the State must prove the following two elements beyond a reasonable doubt:
1. Patrick Neal Wolf entered a structure owned by or in the possession of Richard Schmid.
2. At the time of entering the structure, Patrick Neal Wolf had the intent to commit a theft in that structure.
You may infer that Patrick Neal Wolf had the intent to commit a crime inside a structure if the entering of the structure was done stealthily and without the consent of the owner or occupant.
The jury returned its verdict of guilty on both the burglary charge and the grand theft charge. Wolf now appeals only the conviction on the count of burglary.
To be entitled to a special jury instruction, a defendant must show that the facts of the case support the instruction, that the instruction is an accurate statement of the law, that the requested instruction is not misleading, that the standard instruction is not adequate to meet the need of the special instruction, and that there is evidence to support the requested special instruction. See DeJesus v. State, 98 So.3d 105, 107 (Fla. 2d DCA 2012).
In considering the specific instruction that Wolf requested, the trial court concluded that the instruction was a correct statement of the law. However, the court also determined that the issue before it was a question of actual possession at the time of the incident and that the standard instruction thus applied to any theory of defense Wolf wished to argue. The court also found that Wolf had failed to meet “the burden for special instruction.” This seems to suggest that the trial court believed the legal relationship between Schmid as owner of the property and Wolf as the tenant was not relevant as to who had actual physical control of the property at the time of the incident. But section 810.02(l)(b)(l) clearly anticipates that a defense to burglary is having a license to enter the property. And caselaw is clear that the owner of a property must be established as someone other than the accused defendant. See Anderson v. State, 356 So.2d 382, 384 (Fla. 3d DCA 1978) (“One of the essential elements of the crime of burglary relevant here is that the burglarized structure or conveyance must be that of another; that is, it must be lawfully possessed at the time of the of *1212 fense by someone other than the defendant.”); see also Andria v. State, 379 So.2d 690, 691-92 (Fla. 4th DCA 1980) (concluding that where “the police officer knew ... that the person was either the tenant or the former tenant” of the residence he was observed entering, “[p]robable cause did not exist for the arrest”).
In analyzing the facts of this ease and the law as it applies to those facts, it first should be noted that the concept of ownership in the context of the burglary statute is different from the general concept of ownership in real property law, although both contexts are applicable here. Ownership in the burglary context is not limited to the title holder of the real property. Rather, anyone who has the legal right to occupy, including a tenant who has license to enter based on a lease agreement, is considered to be an “owner” for the purpose of the burglary statute. Anderson, 356 So.2d at 385 (“It is ... well-settled that a legal tenant who occupies the burglarized premises at the time of the offense is the ‘owner’ thereof under the burglary statute .... ”), disapproved on other grounds by In the Interest of M.E., 370 So.2d 795 (Fla.1979); see also Harper v. State, 169 So.2d 512, 514 (Fla. 2d DCA 1964) (“The general rule applicable in eases of this type is that the ownership of the building should be laid, not in the holder of the legal title where he is not in possession, but in the actual occupant, the party in possession and control of the building.... Under this rule, where property is occupied by a lawful tenant, the ownership should be laid in the tenant....”); Haugland v. State, 374 So.2d 1026, 1032 (Fla. 3d DCA 1979) (“The state here incorrectly laid the ownership of the burglarized premises solely in the landlord fee-title owner when the proof at trial clearly established that such owner as pled was not in possession of such premises at the time of the burglary. Such was fatal to the state’s case.”).
In the context of real property law, the ownership of title is akin to holding the proverbial “bundle of sticks.” See generally City of Orlando v. MSD-Mattie, L.L.C., 895 So.2d 1127, 1130 (Fla. 5th DCA 2005) (“[P]roperty ownership ... is a bundle of rights analogous to a bundle of sticks.”). The owner can transfer to another person one of the “sticks” and still retain title ownership. Id. (noting that in the case of an easement “all rights not granted are retained by the grantor”). But once an owner has transferred that stick in the form of a particular ownership interest, the owner usually does not retain any rights to that interest.
The circumstances here, however, are somewhat unusual because although Schmid transferred to Wolf the legal right to occupy the property, Schmid reserved for himself a right of joint occupancy with Wolf. That fact, however, does not negate the legal license to occupy that Schmid conferred on Wolf via the lease agreement.
And Schmid’s attempt to simply assert actual physical control over the premises does not, in and of itself, terminate the lease agreement or the rights conveyed thereunder. See § 83.57(3). Schmid did not give Wolf the statutorily required notice that he was terminating the lease or file a complaint for possession; therefore he did not legally terminate the rental agreement with Wolf.
I do recognize that a tenant can abandon or waive his possessory interest rights by his actions or words. Whetstone v. State, 778 So.2d 338, 342 (Fla. 1st DCA 2000) (“[Pjroof of abandonment of leased premises requires that there must be an intent to abandon and conduct by which the intention is carried into effect .... ” (internal quotation marks omitted)), receded from *1213 on other grounds by Jones v. State, 790 So.2d 1194 (Fla. 1st DCA 2001).
In Washington v. State, 11 So.3d 980 (Fla. 5th DCA 2009), Washington and the victim were joint tenants who lived together prior to the burglary. The victim ordered Washington to leave and changed the locks after he left. Upon leaving, Washington took all of his possessions with him. The victim then asked the landlord to remove Washington’s name from the lease, and she paid the full rent herself. The trial court denied Washington’s motion for judgment of acquittal, which was based on the premise that as a cotenant he still had a right to enter the premises. Id. at 981. The Fifth District affirmed, finding that “a jury question was presented as to whether [the victim] had a superior interest in the premises.” Id. at 982.
Based on the same reasoning, I conclude that whether Wolfs actions exhibited an abandonment of his possessory interest is a question of fact for the jury to determine and that the trial court was correct to deny Wolfs motion for judgment of acquittal and to submit the issue to the jury.
However, I further conclude that Wolf was entitled to have the jury advised as to his legal rights under chapter 83. That is, if he held a legal right to possess/occupy the property and if that legal right had not been terminated in the statutorily prescribed manner, then Wolf was licensed to enter under section 810.02(l)(b)(l) and could present a defense that he did not commit burglary. Advising the jury of his rights under the statute would give the jury the opportunity to consider all of the factors in deciding whether he maintained a legal right to possess/occupy the premises. See Pierre v. State, 77 So.3d 699, 701-02 (Fla. 3d DCA 2011) (“Pierre’s legal interest as a lessee is but one factor among the totality of circumstances to be considered in determining whether the victim had a superior possessory interest on the night in question.”).
With regard to whether Wolfs requested instruction was misleading, I acknowledge that it did not explain that a tenant may waive his legal standing as an owner by his acts, such as voluntarily leaving the premises and returning the key. However, I would suggest that when presented with the proposed instruction, it is the State’s responsibility to request further modification in order to clarify the issue of waiver or abandonment. But I do not see that the requested instruction in any way misleads the jury as to Wolfs rights under the law, and I would not find the requested instruction fatally flawed because it did not also provide the State’s theory of its case. Furthermore, even without the State requesting further clarification, Wolfs proposed instruction is a more accurate statement of the law as it would pertain to the instant facts than is the standard jury instruction.
For these reasons, I believe the trial court erred in denying Wolfs request and I would reverse.

. Schmid did not retain a copy of the agreement, no copy was produced at trial, and the record does not otherwise contain a copy. However, Schmid testified to the details of the agreement.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

.The two counts of dealing in stolen property were charged in a separate case. After Wolf's conviction for the burglary and grand theft at jury trial, Wolf entered a negotiated plea on the dealing in stolen property charges. The only conviction being challenged on appeal is the burglary conviction.

. Schmid testified that Wolf told him he entered the home through the garage using the *1211 garage door opener. However, the investigating detective testified that Wolf's statement to police indicated that he crawled through an unlocked window to gain access to the home.